Bullock v. Bullock.

*For reversal*—ABBETT, DIXON, GARRISON, LIPPINCOTT, REED, VAN SYCKEL, BROWN, SMITH—8.

*For affirmance*—None.

ANNA E. BULLOCK, appellant,

*v.*

THOMAS O. BULLOCK et al., respondents.

1. The jurisdiction acquired by the courts of one state over parties to an action incidentally affecting lands in another state, is a jurisdiction purely *in personam.* The decree or judgment in such action cannot have any extraterritorial force *in rem.*

2. A decree or judgment of the courts of one state requiring and directing lands in another state to be conveyed or charged or otherwise disposed of, may be enforced by their process and when enforced or submitted to, by the execution of a conveyance, mortgage or other instrument as directed, such conveyance, mortgage or other instrument is effective in the *situs rei,* but not the decree.

3. The courts of the *situs* of lands are not bound by the decree or judgment of the courts of another state affecting such lands made in an action in which their jurisdiction is purely *in personam,* for their jurisdiction being limited their decree and judgment can extend no further. Full faith and credit will be given to such decrees and judgments under section 1 of article 4 of the constitution of the United States, by according to them a force merely personal upon the parties and enforceable alone by their process.

4. Such decrees and judgments do not create a personal obligation upon the party which the courts of another state are bound to compel him to perform; at the most, they impose a duty, the performance of which may be enforced by the process of the courts pronouncing them.

5. The courts of the *situs* of lands cannot be compelled to issue their decrees to enforce the process of courts of another state, or the performance of acts required by the decree of such courts, ancillary to the relief thereby granted, affecting such lands.

6. A court of New York having jurisdiction over the action and parties dissolved the bonds of matrimony between them, fixed the amount and directed the payment of alimony, and ordered the husband to execute and deliver to

36

Bullock v. Bullock.

the wife a mortgage upon lands in New Jersey to secure the payment of the alimony.—*Held*, that a bill founded upon the order requiring such a mortgage to be given and praying a decree that the mortgage should be given in conformity to the order, disclosed no equity and was properly dismissed.

On appeal from a decree dismissing a bill advised by Vice-Chancellor Bird, whose opinion is reported in *Bullock* v. *Bullock, 6 Dick. Ch. Rep. 444.*

Mr. *Edward Q. Keasbey,* for the appellant.

Mr. *James Buchanan,* for the respondents.

The opinion of the court was delivered by

MAGIE, J.

The appellant in this cause was the complainant below. Her bill of complaint stated the following facts, viz., that she had commenced an action in the supreme court of the State of New York, which court had "jurisdiction in the case," against respondent, her former husband, for the purpose of dissolving the marriage previously entered into by them ; that respondent was personally served with process and duly appeared in said action ; that such proceedings were had thereon that a judgment was rendered in her favor, whereby it was adjudged that said marriage should be dissolved ; that respondent should pay to her, as alimony, $100 on the first day of each month, commencing June 1st, 1892, and should execute a mortgage as security for such payments, upon lands in the State of New Jersey, of such form and containing such provisions as the court should subsequently direct and approve ; that said court, by a subsequent order, directed respondent to execute, acknowledge and deliver to appellant a mortgage of a specified form and containing specified provisions, upon lands in this state which were particularly described in the order ; that respondent had failed and refused to execute and deliver the mortgage as directed, and made various mortgages and conveyances of said lands without consideration and with the fraudulent purpose of defeating appellant's rights.

Bullock v. Bullock.

It was charged in the bill that appellant, by virtue of the decree and order of the New York court, acquired an equitable lien on said lands prior to the lien and interest of the mortgagees and grantees of respondent, and an equitable right to a mortgage on said lands in accordance with the decree and order.

Upon these statements and charges the prayers of the bill were for answer and discovery, for a decree setting aside the mortgages and conveyances of respondent, and that he be " decreed, pursuant to the said decree and order of the New York supreme court, to execute and deliver" to her " the mortgage on said premises therein directed to be made and delivered, according to the form therein provided." There was a general prayer for relief.

Respondent moved the court of chancery to dismiss the bill pursuant to the practice established by rule 215 of that court, upon the ground that the bill exhibited no equity entitling appellant to the relief she prayed for. The notice of the motion specifically set forth the grounds of objection.

The motion was heard by Vice-Chancellor Bird, and upon his advice a decree was made dismissing the bill. The opinion of the vice-chancellor is reported in 6 Dick. Ch. Rep. 444. From this decree appellant has prosecuted the appeal which is now to be decided.

A motion to dismiss a bill under chancery rule 215 is a substitute for a demurrer. The rule was designed to furnish a speedy mode of bringing to adjudication questions which, before its adoption, could only be raised by demurrer. Obviously, all facts stated in the bill which are relevant and well pleaded must be deemed to be admitted to be true upon such motion as upon a demurrer, of which it is the substitute.

Looking at the bill to discover what facts must have been taken to be true upon the hearing of the motion to dismiss, I find difficulty in determining how extensive a jurisdiction is thereby asserted to have inhered in the supreme court of New York. It is expressly stated that the action commenced in that court was for the purpose of dissolving the marriage of the parties, and there is a conjoined statement that the court had

jurisdiction of the case. From these statements it was obviously to be assumed that the court in question had jurisdiction to decree a divorce and annul a marriage.

But is it to be inferred—for there is no express averment of it—that the same court possessed jurisdiction to fix the amount and require payment of alimony, and especially to require a defendant to secure the payment of alimony by a charge upon lands lying beyond the territorial jurisdiction of the court? Alimony is, in general, an incident of divorce. It may be justifiable to infer that a court empowered to dissolve the bonds of matrimony would also be clothed with authority to determine on the amount of alimony and to render judgment therefor. But how, without some further averment, is an inference to be drawn that the same court was authorized to require security for the payment of alimony to be given by the mortgage of lands and of lands beyond its jurisdiction?

If, however, the bill is defective in the respect suggested, the defect was not included in the causes set out in the notice of the motion to dismiss, and no objection upon that ground was made in the court below or here. From this, I think, we must deem it to have been conceded that the bill properly averred the jurisdiction of the supreme court of New York to make the decree and order mentioned in the bill, and copies of which were annexed to and made a part thereof.

The decree, in this respect, ordered respondent to pay to appellant the alimony from time to time during her natural life, and to execute and deliver to her a mortgage on his real estate, and particularly that located in the state of New Jersey, to secure such payments. The order simply required respondent to perform the decree by executing, acknowledging and delivering to appellant a mortgage on particular lands in New Jersey, of a form shown in a schedule annexed to the order. The order and requirement of the court was therefore directed in personam, and there was no attempt to adjudicate or enforce an adjudication in rem.

It is scarcely necessary to observe that a court of New York could not have been empowered to affect by its decree or judg-

·ment lands lying within another state. For no principle is more fundamental or thoroughly settled than that the local sovereignty, by itself or its judicial agencies, can alone adjudicate upon and ·determine the *status* of lands and immovable property within its borders, including their title and its incidents and the mode in which they may be charged or conveyed. Neither the laws of another sovereignty, nor the judicial proceedings, decrees and judgments of its courts, can in the least degree affect such lands and immovable property. *Story Confl. L.* §§ *543, 591.* The concession as to the jurisdiction of the supreme court of New York in this case must therefore be deemed to be limited .to a jurisdiction to proceed *in personam* and not to extend to a determination, adjudication or decree *in rem.*

The jurisdiction thus conceded to the supreme court of New York is exactly analogous to the jurisdiction which, since the ·decision of *Penn* v. *Lord Baltimore, 1 Ves. 444,* has been universally recognized as inherent in courts administering equity. This recognized jurisdiction extends to making decrees in cases of equitable cognizance, such as fraud, trust and specific performance against persons brought into those courts, notwithstanding such decrees incidentally affect lands beyond the court's jurisdiction. But the exercise of this jurisdiction has been supported solely on the ground that it operated *in personam* only, and did not extend to the utterance of decrees *in rem.* In the leading American case, Chief-Justice Marshall declared that the question was whether the question presented was an unmixed question of title, or a case of fraud, trust or contract. *Massie* v. *Watts, 6 Cranch 148.* If relief cannot be effectively given by the decree *in personam,* such courts will not retain the bill. *Morris* v. *Remington, Par's. Eq. 387; Lindley* v. *O'Reilly, 21 Vr. 636.* Nor will the power be exerted *in personam* to compel an act affecting lands in another jurisdiction of doubtful legality. *Blount* v. *Blount, 1 Hawks 365.* The power of such courts to make effective such decrees is limited to their process operating upon the party, such as sequestration of property within juris- ·diction, attachment for contempt and the like; it will not extend to validating a conveyance of the foreign lands made by its

master or commissioner, in default of the performance of the decree by the party.    *Watts* v. *Waddle, 6 Pet. 390; Burnley* v. *Stevenson, 24 Ohio St. 474.*    When by the process of the court acting upon the party obedience to the decree is enforced as by the conveyance, it is the conveyance, not the decree, that affects the lands in the foreign jurisdiction.    *Davis* v. *Headley, 7 C. E. Gr. 115.*

The long line of cases illustrating this doctrine and its limitations is collected in *22 Am. & Eng. Encycl. L. 918.*    Nowhere has the doctrine been more clearly stated than in our own courts. *Wood* v. *Warner, 2 McCart. 81; Davis* v. *Headley, ubi supra; Potter* v. *Hollister, 18 Stew. Eq. 508; S. C., 1 Dick. Ch. Rep. 609; Lindley* v. *O'Reilly, 21 Vr. 636.*

In my judgment it does not admit of doubt that the jurisdiction of the supreme court of New York, if properly averred in the bill, was a jurisdiction to make a decree as to alimony and its being secured by mortgage on lands in New Jersey only *in personam*, and to enforce it by any process against respondent which is proper in that state.    Nor was the decree which was pronounced by that court capable of any other construction than one which shows it to have been within such conceded jurisdiction.

From these considerations I deem it evident that the theory of this bill that, by virtue of the decree and order of the supreme court of New York, appellant acquired an equitable lien on lands in New Jersey and a right to have such lands disposed in a certain manner, cannot be sustained without a disastrous violation of fundamental principles.    The decree and order of that court does not pretend to have any such purpose or effect, nor could that court be empowered to make a decree having such an effect.

But it is ingeniously contended in this court that the decree and order of the supreme court of New York imposed upon respondent a personal obligation to do what that decree and order had directed him to do, and that a court of equity in New Jersey ought to compel him to perform that obligation as it would compel him to perform his contract to convey or mort-

Bullock *v.* Bullock.

gage lands in its jurisdiction. Moreover, it is contended that the provisions of section 1 of article 4 of the constitution of the United States, requiring full faith and credit to be given in each state to the records and judicial proceedings of every other state, impart to this decree and order a conclusive force with respect to the mortgage directed to be given on lands here, which compels our courts to enforce it by decrees in conformity therewith.

Doubtless the judgment of the New York court must be accorded in our courts a conclusive effect in certain respects. Thus it has conclusively determined the *status* of the parties to that action, and that the marital relation previously existing between them has been absolutely dissolved. If, by the direction to pay alimony an indebtedness arises from time to time as such payments become due, an action at law would lie thereon and the decree would furnish conclusive evidence of such indebtedness.

But the question, upon the solution of which this case must turn, is whether the courts of New Jersey must give conclusive effect to the decree or judgment of the courts of New York made in a case where they had acquired jurisdiction of the parties but affecting lands situated here, and disposing of the title thereto in whole or in part. If this question is to be answered in the affirmative, it seems evident that we accord jurisdiction over lands in New Jersey to the courts of other states, and, as was said by Chancellor Zabriskie, in *Davis* v. *Headley, supra,* "leave to the courts of this state only the ministerial duty of executing their decrees." For the doctrine that jurisdiction respecting lands in a foreign state is not *in rem* but only *in personam* is bereft of all practical force if the decree *in personam* is conclusive and must be enforced by the courts of the *situs.*

If such is the effect which must be given to the judgments and decrees of the courts of a sister state respecting lands situated here, it is extraordinary that no trace of the doctrine can be found in text-books or in adjudicated decisions. My researches have not disclosed any support of the doctrine by any text-writer of repute or by any decision in point. The very indus-

trious counsel who maintained this view in argument has produced no authority which, in my judgment, sustains his position.

In *Elizabeth Savings Institution* v. *Gerber, 8 Stew. Eq. 151,* the question was as to the effect to be attributed by our courts to an order of a court of New York directing a New Jersey corporation to pay money due from it to one Ahern, in part satisfaction of a judgment which the savings institution had recovered against Ahern in New York. The decision of this court went upon the ground that the New York court had not acquired jurisdiction of the New Jersey corporation, which had been ordered to pay, and that its order was consequently void. What was said by the learned chief-justice who wrote the opinion respecting the power of our court of chancery to enforce a right to money under such an order was unnecessary to the decision, but can doubtless be supported, because the New York order was for the payment of money raising an indebtedness, which in that case required to be enforced in the court of chancery, as the debt which was the subject of the order had then been paid into that court. But the effect of a foreign judgment or decree as to money in another state must differ from the effect of such a judgment and decree as to lands in another state.

*Cheever* v. *Wilson, 9 Wall. 108,* presents a closer parallel to the case in hand. In that case a divorce court in Indiana made an order that one of the parties to an action for divorce should pay to the other party a certain proportion of the rents to accrue from real estate situated in the District of Columbia, and should execute to him a sufficient power to collect such rents. She executed the power as prescribed, and the question before the court was what interest in the rents passed thereby. Mr. Justice Swayne, delivering the opinion of the court, incidentally said that the order "could have been enforced in the *situs rei* by proper proceedings conducted there for that purpose." But this statement is not supported by the cases cited, and was unnecessary to the decision, as the learned judge immediately pointed out by showing that the party had executed an assignment which vested in the other party the interest in the rents which

Bullock *v.* Bullock.

she had been ordered to convey. The whole question was as to the effect of that assignment.

The contention that such an order requiring lands in New Jersey to be charged with alimony created a personal obligation on respondent is, in my judgment, without force. It is a misuse of terms to call the burden thereby imposed on respondent a personal obligation. At the most, the decree and order imposed a duty on him, which duty he owed to the court making them. That court can enforce the duty by its process, but our courts cannot be required to issue such process or to make our decrees operate as process. Moreover, the substantial part of the decree is comprised in the dissolution of the marriage and the direction to pay alimony. The charge of the alimony upon lands is rather in the nature of process to enforce the substantial decretal order for alimony.

The establishment of the contrary doctrine would result in practically depriving a state of that exclusive control over immovable property therein which has always been accorded. For example, by our statutes, contracts respecting lands, to be enforceable, must be entered into and evidenced in a particular mode, but our courts, upon equitable grounds, sometimes enforce contracts that are without the statute. It is the province of our legislature to prescribe the rule for such contracts and for our courts to construe the rule so prescribed and to determine when such contracts, whether within or without the statute, may be enforced. It is true that the courts of another state, proceeding *in personam* to enforce a contract for lands in New Jersey, would be bound to determine whether the contract was enforceable under our laws. But they would construe those laws, and if their decree *in personam* may and must be conclusive in our courts and compel a decree in conformity therewith, it is obvious that the contract will be enforced according to whatever construction the foreign court put upon our laws, and not according to the construction of our own courts. Other examples will occur to anyone considering the subject.

For these reasons I shall vote to affirm the decree below.

GARRISON, J. (concurring).

I concur in the result announced by Mr. Justice Magie, but not for the reasons contained in the opinion just read, nor for those stated in the conclusions of the learned equity judge who heard the cause in the court of chancery.

The object of the complainant's bill is to execute, through the medium of our court of chancery, an order made by the supreme court of New York upon the defendant to secure his performance of a decree rendered therein against him by mortgaging his lands in New Jersey. The procedure in this state is justified under that provision of the federal law that gives conclusive force in one state to the records and judicial proceedings of another. The vice of this deduction, in the case before us, is that it assumes that the order made by the New York court to secure the performance by the defendant of its decree against him is a *"judgment"* of that state within the meaning of the federal constitution and the act of congress.

The transcendent force given by the federal law to the judicial proceedings of sister states is confined to such judicial determinations as possess the quality of *judgment;* it does not extend to proceedings in the nature of execution or to orders merely ancillary to some special form of relief.

In cases that proceed to judgment in common-law form, this distinction is well marked, but it is liable to be lost sight of in decisions rendered in equity causes where judgment, in decretal form, is often accompanied by special orders for particular forms of relief or for the enforcement or securing of the execution of the decree pronounced. The distinction, however, is always a substantial one that must not be overlooked because of the form in which the decretal order may be framed.

That only is *judgment* that is pronounced between the parties to the action upon the matters submitted to the court for decision. To judgments thus rendered, the federal law accords in every state the same conclusive force possessed in the state where they are rendered. After judgment in a state court, all that follows for the purpose of enabling the successful party to reap the benefits of the determination in his favor is execution or in

aid of execution.    No interpretation has ever been placed upon
the federal constitution giving conclusive effect, or, indeed, any
effect at all to the executions of the judgments rendered in sister
states or to any order merely in aid thereof.    Such orders lack
the quality of *judgment* and must be differentiated from judg-
ments, even though embodied in the same decretal orders that
pronounce the judgment of the court.    These decretal orders
may be defined to be decisions made touching some matter col-
lateral to the issue presented in the record or required to be
passed upon in order to carry into execution the judgment of
the court.    To these determinations ancillary to execution, no
extra-territorial force is given by the federal law.

That the order in the present case touching the defendant's
land in New Jersey is of this nature clearly appears in the case
before us.    Upon this demurrer it is established that the New
York suit was instituted for the sole purpose of dissolving the
marriage of the complainant with the defendant.    Upon the
record thus submitted the supreme court of New York pro-
nounced as its judgment that the marriage should be dissolved
with the incident of alimony to the complainant.    Here the sen-
tence of the law upon the record ceases.    The order of the court
then proceeds in these words: "And it is further adjudged and
decreed that the said defendant, within ten days after the entry
of *this judgment* and service thereof on the attorney for the
defendant, execute and deliver unto the plaintiff a mortgage
covering the real property owned by the defendant and particu-
larly located in the State of New Jersey, which mortgage shall
be of such form and contain such provisions as shall be sufficient
and requisite *to secure* unto the plaintiff the faithful performance
of the provisions of *this judgment and decree* on the part of the
defendant as may be directed and approved by this court."

In my opinion this order was ancillary to execution and did
not possess any element of a judgment upon the issue submit-
ted to the court for decision, which was whether the marriage
between the parties should be dissolved.    For this reason I
think the complainant's bill was properly dismissed.

VAN SYCKEL, J. (dissenting).

The supreme court of New York made a decree for divorce in favor of the wife, and ordered that the husband pay $100 per month alimony, and that to secure it to the wife he should execute a mortgage on lands which he owned in New Jersey. Personal service was made upon the husband in the New York divorce suit, and the decree for divorce, including the order to execute the mortgage, was obtained on the 1st day of July, 1892.

On the 19th of November, 1892, on the application of the wife's attorney, an order was entered in the New York court specifying the lands in New Jersey upon which the husband should execute the mortgage.

Thereupon the wife filed a bill in the court of chancery of this state to compel the husband to execute the mortgage in accordance with the New York judgment, and also to set aside conveyances of the property in this state by the husband, which are alleged to be fraudulent.

The first question is, whether the New York court, on common-law principles, had the power to decree a mortgage to be executed to secure the wife's alimony.

The ecclesiastical courts had no such power.

These courts enforced their decrees by excommunication until an act was passed (*53 Geo. III. c. 127*) forbidding excommunication and providing imprisonment for contumacy in its stead.

The power of the New York court, if it exists, must be statutory.

Prior to the judgment the presumption, in the absence of proof, would be that the common law prevailed and that no such power rested in the New York court. But after judgment the presumption will be that all things were rightly done and that the power did exist by statute in New York.

This presumption will prevail until evidence is produced to repel it. In this case there is an entire absence of proof. on this point. Admitting this to be so, the judgment in New York constitutes no lien upon lands in this state. *Davis* v. *Headley, 7 C. E. Gr. 115 ; Lindley* v. *Reilly, 21 Vr. 636.*

Bullock *v.* Bullock.

But this does not ·dispose of the case. The question is,. whether our court of equity will establish a lien upon the New Jersey lands so as to give effect to the New York decree.

It may be conceded that the *lex fori* must apply to the remedy to enforce the New York judgment in our courts. *Harker* v. *Brink, 4 Zab. 333; Garr* v. *Stryker, 1 Harr. 404; Amour* v. *McMichael, 7 Vr. 92.*

While we will give full faith and credit to the New York· judgment, we cannot be asked to give greater efficacy to a decree for alimony made in New York than we can give to a like decree made in our own courts.

For instance, if the common law prevailed here, we would enforce the New York decree for alimony only according to the· common-law practice, for that would exhaust our power in that respect.

Under our statute concerning alimony it has been held that equity may decree that it shall be a lien upon the husband's lands. *Snover* v. *Snover, 2 Beas. 261.*

I do not find that a decree has been made expressly requiring the husband to execute a mortgage, but it is not necessary here as the decree that it shall be a lien by its own force attaches to· the land. It is a difference in mere form, .not in substance.

The right to establish the lien must carry with it the power to require the husband to execute any conveyance requisite to its· enforcement. The question to be solved, therefore, is whether, under that provision of the federal constitution which requires that full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state, the· wife is entitled to invoke the aid of our courts to give effect to· the New York judgment in conformity to our practice.

It is undoubtedly true that the New York court had no power to create a lien upon New Jersey lands, and it is also true· that the New York court could have acted upon the person of the husband while within its jurisdiction and constrained him to· execute such a writing as would have been effective to pass the title to, or establish a lien on, the New Jersey lands. The question, however, is not what the New York court could have·

done, but what the courts of New Jersey, in discharge of her constitutional obligations, should do in aid of the wife after rendition of the judgment in New York.

The New York court having jurisdiction of the person of the husband and also of the subject-matter of the suit there, the judgment in that state, as between the parties to that suit, was conclusive of the right of the wife to have the husband execute a mortgage upon the New Jersey lands, although it did not of its own force create a lien upon the lands. As to the title to such lands, it had the effect of an admitted legal contract or obligation by the husband to convey and should be enforced in equity here.

A judgment in New York that a party defendant shall specifically perform a written contract to convey lands in New Jersey would furnish no better foundation for the interference of our court of equity than the judgment relied upon in this case. In what respect they differ in principle is not apparent. In either case obedience to the mandate of the federal constitution would give effect to the judgment here.

In *Elizabeth Savings Institution* v. *Gerber, 8 Stew. Eq. 153,* this court held that a judicial order in New York that the garnishee owes a debt to the defendant in a judgment, such moneys being in the custody of a court of equity, creates *per se* a right to apply to such court for such moneys in the same way as an assignment of such moneys to the plaintiff in the judgment would have passed such right. Such a decree in the New York court settled the plaintiff's right to the fund, and that right was an equitable one, which was enforced in this state.

The decree or judgment in New York has the effect of being not merely *prima facie* evidence, but conclusive proof of the rights thereby adjudicated, and a refusal to give it the force and effect in this respect which it had in the state in which it was rendered denies a right secured by fundamental law.

The force and effect of the decree for alimony in New York was not to create a lien upon lands in New Jersey, but to conclusively entitle the wife to have that decree enforced against the husband.

It being competent for our courts to enforce such a decree made in our own courts by establishing it as a lien on lands, we cannot refuse like relief in this case on the extra-territorial judgment. *Huntington* v. *Attrill, 146 U. S. 657; McElmoyle* v. *Cohen, 13 Pet. 312.*

In *Cheever* v. *Wilson, 9 Wall. 108, 121,* there was an order of the divorce court in Indiana directing the wife to pay one-third of her rents as they became due to her husband. The land was in Washington, where suit was brought to enforce payment of the rents to the husband. The court said that the decree in Indiana, so far as it related to the real property in question, could have no extra-territorial effect; but if valid, it bound those who were parties in the case, and could have been enforced in the *situs rei* by proper proceedings for that purpose.

The judgment in New York must be regarded as conclusively imposing a legal personal obligation or duty upon the husband to mortgage his lands in New Jersey.

The New York judgment is conclusive between the parties to it—

*First.* As to the right to a divorce.

*Second.* As to the right of the wife to the alimony allowed.

*Third.* It is equally conclusive, as against the husband, as to her right to have such alimony secured by a mortgage on his New Jersey lands, that being expressly a part of the adjudication in New York.

The judgment imposed an obligation upon the husband from which he cannot relieve himself by removing from the jurisdiction in which it was rendered; that obligation follows him into this state.

The lien does not by mere force of the extra-territorial judgment attach to lands in this state. To impress that lien upon lands here the intervention of our court of equity is necessary, just as it is necessary to sue here upon a New York judgment before execution can issue from our courts to obtain satisfaction of it.

The husband has had his day in court in New York, where all these questions have been adjudicated against him, and our courts should hold that he is thereby concluded.

The question in its true form is whether we will give full faith and credit to the judgment of the New York court in so far as it finally adjudges the questions legally submitted to it, when it had jurisdiction both of the subject-matter of the controversy and of the parties to it.

It seems to me that there can be but one answer to this question, and that the court below erred in dismissing the complainant's bill.

*For affirmance* — ABBETT, DEPUE, GARRISON, MAGIE, BROWN, SMITH—6.

*For reversal*—DIXON, LIPPINCOTT, REED, VAN SYCKEL, BOGERT—5.