ELDRA I. CORBIN, complainant-respondent,

*v.*

JAMES E. MATHEWS, defendant-appellant.

[Argued February 11th, 1941. Decided April 25th, 1941.]

*Mr. Leonard J. Emmerglick, Mr. Joseph Bigel* and *Mr. Horace S. Bellfatto,* for the complainant-respondent.

*Mr. Samuel Denson,* for the defendant-appellant.

The opinion of the court was delivered by

CASE, J.

The bill of complaint sought and the decree directed that the defendant pay to the complainant the accrued arrearages under a separation agreement made between the parties as husband and wife on August 31st, 1937. The decree was entered after the striking of defendant's answer and counter-claim upon the ground that the same were in part sham and in part frivolous. For the reasons hereinafter stated we think that the answer should not have been struck and that consequently there should be a reversal of the decree.

Complainant was defendant's wife. On August 31st, 1937, the two entered into a written agreement to live apart, not to molest each other and that it should "be lawful for the said wife * * * to live separate and apart from the said husband and free from his marital control and authority as if she were sole and unmarried." The agreement provided for the disposition in the wife's favor of a real estate property and contained this pertinent paragraph: "The said husband shall during the joint lives of himself and the said wife, pay to her, the said wife, the sum of Fifteen Dollars per week as her separate estate, to be paid on Monday of each and every week hereafter." Complainant forthwith, with the defendant's knowledge and acquiescence, sued for divorce in the Nevada courts, and on November 20th, 1937, obtained a decree which granted absolute divorce and directed that the above mentioned contract between the parties "settling their property rights and providing for the support of plaintiff * * * be and the same is hereby ratified and adopted by the court, and by reference made a part of this decree to the same extent and with the same force and effect as if set out at length herein; and the parties be, and they hereby are, ordered and directed to comply therewith and to execute the terms thereof."

The bill of complaint recites the agreement, alleges that it provides for the support and maintenance of the complainant by the defendant at the rate of $15 per week during their joint lives, makes casual reference to complainant's divorce and remarriage without in any manner counting upon the same, charges that the defendant complied with the terms of the agreement until July 10th, 1939, since which time he has refused and neglected to pay "to complainant the sum or sums so agreed upon for her support and maintenance" and prays that the defendant be decreed to pay to the complainant the arrearages and all sums which shall have accrued at the entry of the Chancery decree. The answer admits the making of the contract, complainant's divorce and remarriage, the making of the payments until the time stated and the refusal to make them thereafter, but sets up that the payments from the making of the divorce decree forward were under and by

reason of that decree, that the contract was obtained by the complainant's fraud in that the complainant concealed from the defendant her then intention of obtaining a divorce and remarrying, knowing or having reason to know that had the defendant been informed of that intention he would not have entered into the agreement, and that the agreement was merged into the decree for alimony and as a contract is terminated. The counter-claim seeks to have the agreement declared void.

It appears from the *ex parte* affidavits submitted on complainant's motion to strike that the defendant had notice of and did not contest the divorce proceeding but that he had no knowledge of complainant's purpose to remarry and did not know that she had remarried until at or about the time when he discontinued making the weekly payments; that had he known of such intention he would not have signed the agreement; that the important events occurred in this speedy chronological sequence—the agreement was made on August 31st, 1937, the divorce proceeding was thereafter instituted and the final decree was entered November 20th, 1937, the marriage with Charles Corbin was on December 18th, 1937; that the complainant concealed the fact of her remarriage from her former husband and their daughter and made no reference thereto in communications with either of them until August of 1939; that so late as November, 1938, she had permitted herself, in the daughter's presence, to be introduced as Mrs. Mathews; that the complainant in her proofs in the instant cause makes suspiciously guarded averments with regard to the existence of an intention to remarry—"My intention to remarry was never *concrete* until some time after I had obtained my divorce," this although the man to whom she was newly married had been a close friend of the defendant, an intimate at their household, had divorced his own wife only a few months earlier and the remarriage was consummated less than four weeks after the divorce decree, which, it seems, had been procured as soon after the separation agreement as the motion of legal machinery would permit.

The march of events took on the appearance of a planned campaign. Our study of the proofs leads us to conclude that

there was sufficient showing of deceit in the making of the contract to defeat a motion to strike, upon the ground that the answer was either sham or frivolous. The defendant showed *bona fides* with colorable support in the proofs sufficient to carry the defense to formal hearing and the opportunity for oral examination and cross-examination. *Datz* v. *Barry, 115 N. J. Eq. 84.*

The incorporation of the agreement in the divorce decree was, so far as concerned the weekly stipend, an adoption of the agreement as the alimony feature of the decree. It appears to be the trend of the decisions that an agreement for maintenance under such conditions becomes merged in a decree for divorce or separate maintenance and that the terms of the agreement are subject to modification by court order. *Herrick* v. *Herrick, 319 Ill. 146; 149 N. E. Rep. 820; Wilson* v. *Caswell (Mass.), 172 N. E. Rep. 251.* Quite recently the Illinois courts held, *Adler* v. *Adler, 373 Ill. 361; 26 N. E. Rep. (2d) 504:*

"Respondent could rely on the contract for the payment and in the event of a breach in any of its parts, could bring appropriate action for the enforcement of its provisions, or she had the right with the approval of the petitioner, to have a consent decree entered adopting the provisions of the agreement. The latter action having been taken, the provisions * * * became merged in the decree. The fact that the decree adopted the terms of the agreement did not destroy or affect the power of the court to alter such provisions when a change of circumstances justified a modification. * * * Either the remarriage of respondent, or the material impairment of the estate and income of petitioner, required a cancellation of all payments of alimony maturing after the date of the filing of the petition."

Our Court of Chancery will not enforce specific performance of a contract to pay alimony; where it has jurisdiction it will regulate the amount of alimony from time to time, supervise agreements between the parties in that regard, enforce them if just and decline to enforce them otherwise. *Apfelbaum* v. *Apfelbaum, 111 N. J. Eq. 529; Phillips* v. *Phillips, 119 N. J. Eq. 462.* In *Second National Bank of*

*Paterson* v. *Curie, 116 N. J. Eq. 101,* this court said (at *p. 110*) :

"The third and fourth points are that paragraph 10, quoted in the opinion of the Vice-Chancellor, *supra,* is in effect a contract between husband and wife, and is not fair and just; and that the Court of Chancery erred in decreeing specific performance of the trust agreement. We take the view that the agreement in these aspects was in its essence and purpose an agreement for the reasonable and suitable support of the wife according to her station and according to her husband's means and ability to support her, and that it comes therefore under the general class of agreements for maintenance where husband and wife are living apart and, as such, is subject to the control of the Court of Chancery, but not by way of specific performance. *Apfelbaum* v. *Apfelbaum, 111 N. J. Eq. 529.* The agreement itself may be regarded by the court as evidential with regard to the amount of money to be paid, though not controlling in that regard."

A further instance of the complete plasticity which a property or maintenance agreement between husband and wife assumes in the Court of Chancery when alimony or payments in the nature thereof are involved is found in *Walker* v. *Walker, 118 N. J. Eq. 309,* a suit by the wife for limited divorce and maintenance. A property agreement releasing the husband from all further liability for alimony and maintenance not only had been entered into between the wife and her husband but had been expressly approved by the court. Nevertheless, the husband was ordered to pay an additional weekly amount for maintenance and support.

We find that the contract between complainant and defendant became engrafted into the divorce decree to the extent that it took on the aspect of and became subject to the incidents of alimony. The agreement, in our opinion, merged with the decree for divorce, and the obligation to make the weekly payments therefore became a court order to pay alimony. The fact that the court took over the terms of the contract did not impair the power of the court to alter such provisions to accord with the equity of unfolding circumstance. We do not know what the Nevada courts would determine if application should

be made by the defendant for a modification of the alimony decree in view of the wife's remarriage; and it is quite unnecessary for us to dwell on that subject inasmuch as this is not a suit for enforcement of the decree. But the course of our Chancery court on a like procedure is charted by the following statutory direction (*R. S. 2:50-38*) :

"If after the decree of divorce the wife shall remarry, the Court of Chancery shall not make any order touching the alimony of such wife except that the Court of Chancery, upon application of the former husband, on notice and upon proof of the marriage of the former wife after the decree of divorce, must modify any order or decree touching the alimony of the former wife by vacating and annulling any and all provisions in any such order or decree, or both, directing the payment of money for the support of the former wife."

We find no equity in the counter-claim. That pleading was properly struck; but this finding has no bearing upon our reversal of the final decree.

The decree below will be reversed, and the record remanded to the Court of Chancery, there to be dealt with in accordance with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 15.