Gladys McVeigh, Individually and as Guardian of the Persons and Estates of Thomas McConnell and Charles Dewey McConnell, Minors, Appellee, v. Ruth T. McConnell, Individually and as Administratrix of Estate of Thomas F. McConnell, Deceased, Appellant, Jane Catherine McConnell et al., Coparty Appellant.

Gen. No. 40,978.

Opinion filed January 19, 1942.

CASTLE, WILLIAMS & McCARTHY, of Chicago, for appellant; HOWARD R. BRINTLINGER and ROBERT R. HANLEY, both of Chicago, of counsel.

THOMAS DODD HEALY, LLOYD FAXON and HARRY WIGGINS, all of Chicago, for appellee.

HARRY A. FLECK, guardian *ad litem,* for coparty appellant.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Gladys McVeigh, individually and as guardian of her two minor children, filed her complaint in chancery against Ruth T. McConnell, individually and as administratrix of the estate of Thomas F. McConnell, deceased, and their two minor children, praying that a written agreement entered into March 18, 1935, between plaintiff Gladys McVeigh, and Thomas F. McConnell be declared null and void on the ground it was obtained from plaintiff by means of fraud and deceit, for an accounting and for other relief. The cause was referred to a master in chancery who made up his report, found there was no fraud or advantage taken

of Gladys McVeigh in procuring the execution of the agreement of March 18, 1935, and therefore it was valid and binding upon her but not upon her two minor children for whom she sues as guardian. The master recommended the allowance of the two minors' claims aggregating $18,618.33 by the probate court where the estate was being administered, as of the sixth class. Afterward the master sustained objections to part of his report, made up his supplemental report in which he held that whether the agreement of March 18, 1935, was valid and binding on the parties should be passed upon by the circuit court of Cook county where the matter of the disallowance of the claim by the probate court was pending on appeal and recommended the dismissal of the complaint for want of equity. The chancellor sustained the master in some respects, over-ruled him in others, and a decree was entered in which it was found (following the master) that no fraud was practiced on Gladys McVeigh in obtaining the execution of the contract of March 18, 1935. Accordingly she was bound by that agreement from making any further claim against the estate of Thomas F. McConnell, deceased, but also held as did the master, that the agreement did not bar plaintiff's two minor children. The court also found that under the terms of the divorce decree entered by the superior court of Los Angeles county, California, between Gladys McConnell (now Gladys McVeigh) and Thomas F. McConnell, there had accrued for the support and maintenance of the two minor children and would accrue during their minority if they both lived, $17,918.33; that Thomas F. McConnell, subsequent to the California divorce, had married Ruth T. McConnell and two children were born as a result of such marriage, one six and the other two years of age; that it would be inequitable in view of the size of the estate left by Thomas F. McConnell to allow the claim of the two children in full, and it was decreed that their claim be allowed by the probate

court of Cook county for $8,000 as of the sixth class. From this decree Ruth T. McConnell, as heir, and as administratrix of the estate of Thomas F. McConnell, deceased, and her two minor children, appeal.

Gladys McVeigh, individually and as guardian of her two children, prosecutes a cross appeal contending her claim and that of her two children should have been allowed in full.

The record discloses that November 27, 1920, plaintiff was married to Thomas F. McConnell, in Santa Barbara county, California. Two children, Thomas F. McConnell, Jr. and Charles Dewey McConnell were born of that marriage who, at the time of the entry of the decree in the instant case, were 18 and 16 years of age respectively. March 16, 1928, Gladys filed her bill for divorce against Thomas F. McConnell in the superior court of California, Los Angeles county, and four days thereafter, March 20, 1928, the parties entered into a written agreement in which was recited their marriage, unhappy differences, etc. Their property was stated to be household furniture, an automobile and an equity of $5,150 in a building and loan association. The household goods were given to the wife, the automobile to the husband and disposition of the interest in the building and loan association was provided for. By a further provision it was agreed that Thomas should pay $150 per month for her support and maintenance as long as she remained unmarried and $100 a month for the support and maintenance of the two children during their minority. Three days after the execution of this agreement plaintiff obtained an interlocutory decree of divorce and May 6, 1929, a final decree of divorce was entered.

In the interlocutory decree it was adjudged that "The minor children of the parties hereto are awarded to the plaintiff and the property settlement heretofore entered into by and between plaintiff and defendant is approved and made a part of this decree." In the

final decree it was "further ordered and decreed that wherein said interlocutory decree makes any provision for alimony or the custody and support of children, said provision be and the same is hereby made binding on the parties affected thereby the same as if herein set forth in full."

June 12, 1929, Thomas F. McConnell was married to defendant Ruth T. McConnell and two children, Jane and John, were born of that marriage, one of whom was born after the father died as a result of an automobile accident, and at the time of the decree in this case Jane was 6 and John 2 years of age.

Plaintiff Gladys, was married April 7, 1933, to Thomas Blake McVeigh but was divorced from him in 1937. After the decree of divorce was entered in Los Angeles, Thomas F. McConnell made no payments to his former wife as he had agreed to do in the agreement of March 20, 1928. Plaintiff in her complaint alleges Thomas F. McConnell's mother paid plaintiff sums aggregating $3,554.12 for which credit was given to him. The record further discloses that the income of Thomas F. McConnell after the divorce varied greatly. Some suggestion is made that he sometimes earned about $500 a month but subsequently for a considerable period he was unemployed and on relief.

December 27, 1933, John M. Grace, a resident of Cook county, Illinois, died and in his will Thomas F. McConnell was named as a legatee, as a result of which he received about $20,000. Henry V. McGurren, a Chicago lawyer, was executor of Grace's will and in the early part of 1935 before McConnell obtained the legacy, he engaged McGurren as his attorney to go to Los Angeles for the purpose of effecting a settlement of his obligations under the agreement of March 20, 1928, or the decree of divorce, with his former wife. McGurren went to Los Angeles and conferred with plaintiff, Mrs. McVeigh, regarding a settlement, she having theretofore instituted proceedings in California

to have him extradited from Illinois because of his failure to support the children, etc. Mrs. McVeigh consulted her lawyer and certain public officials of Los Angeles whose duty it was to see that the children were taken care of, and the written agreement above mentioned, of March 18, 1935, was entered into between Mrs. McVeigh and her former husband who acted through his attorney, McGurren. The agreement referred to the divorce suit in California, stated that both parties had subsequently remarried, and continued, ''WHEREAS the parties hereto did on or about the 20th day of March, 1928, make and enter into an agreement adjusting and settling their property rights, as well as their mutual rights of support and maintenance, which agreement was referred to and approved in the said Decrees of Divorce, and

''WHEREAS said agreement did establish a civil obligation on the party of the second part [Thomas] to pay to the party of the first part certain sums for the support and maintenance of said party and of the children of the parties hereto, and

''WHEREAS, the financial status of the party of the second part has materially changed since the execution of the said agreement, and considerable sums have accrued under the terms thereof,'' and that both parties were desirous of settling all existing obligations between them and $1,250 was paid to Gladys in full of all existing obligations ''either for her support or for the support of the minor children of the parties hereto, and said contract, insofar as it provides for the payment of any sums for the support of the party of the first part or the children of the parties hereto, is hereby cancelled.

''*Second*: It is distinctly understood and agreed that this contract shall in no way affect or relieve the party of the second part from his statutory obligation under the laws of the State of California to provide

support for the children of the parties hereto; present custody of said children shall not be disturbed until further order of Court.''

There is evidence in the record and considerable argument of counsel as to what took place between Mc-Gurren, Mrs. McConnell, her attorney and the other parties in California at and prior to the time of the making of the agreement of March 18, 1935. Mrs. Mc-Veigh and her California attorney gave testimony to the effect that McGurren said his client, Thomas F. McConnell, was broke and had borrowed the money with which to make the settlement, while on the other side this is denied by McGurren and Mr. Oakley (connected with the City Attorney's office of Los Angeles), who was present at the time, testified that he did not recall any statement made by McGurren as testified to by Mrs. McVeigh and her counsel.

The master and chancellor both found there was no fraud practiced by McGurren in obtaining the settlement agreement. We might say, however, that after the case was pending in this court, Mrs. McVeigh had a verdict and judgment in her favor against McGurren in the District Court of the United States for the Northern District of Illinois, Eastern Division, for $12,500. This judgment was affirmed by the United States Circuit Court of Appeals for this, the seventh, Circuit, *McVeigh v. McGurren*, 117 F. (2d) 672. The basis of that judgment was that Mrs. McVeigh had been defrauded by McGurren in obtaining the California agreement. The verdict and judgment in that case was in favor of Mrs. McVeigh for $4,000 in her own right and for $8,500 in her favor as guardian of her two children. On the oral argument in the case at bar counsel for Mrs. McVeigh stated that judgment had been paid in full. The instant case was assigned to the Second Division of this court. The decision was there somewhat delayed, and to expedite matters, at

the request of the Second Division we recently set aside the order assigning the case to the Second Division.

Many points are made by counsel for both sides in support of their respective positions, numerous authorities are cited, discussed and applied, but we think it unnecessary to discuss these further than to say that the provision for the support of the wife and the two minor children of the parties in the agreement entered into between them March 20, 1928, a few days after the divorce suit was instituted in California, became and was a part of the decrees entered by the California court. And counsel for all parties seem to agree that if the settlement agreement of March 20, 1928, became a part of the divorce, the California court, if application had been made, might change the award made for the wife and the children's support. Counsel for plaintiff say that no such application having been made, the amounts awarded by that court should be allowed as a claim by the probate court of Cook county. In support of this counsel cite *Black v. Black,* 149 Cal. 224; *Herrick v. Herrick,* 319 Ill. 146; *Walter v. Walter,* 189 Ill. App. 345, and other cases.

In the *Herrick* case our Supreme Court said: "Section 18 of the Divorce act specifically provides that 'the court may, on application, from time to time, make such alterations in the allowance of alimony and maintenance, and the care, custody and support of the children, as shall appear reasonable and proper.' Alimony does not arise from any business transaction but from the relation of marriage. It is not founded on contract but on the natural and legal duty of the husband to support the wife. . . . In the instant case the agreements, which by the consent of the parties, and no doubt at the instance of appellant, were incorporated in the decree as a proper provision for alimony became merged in the decree when entered and thereupon lost their contractual nature, at least to the extent that the court has the power to change and modify the de-

cree, upon the application of either party, when a change of circumstances justifies the modification. . . .

". . . Where there is a change in circumstances which upon principles of equity requires a change in the order for alimony there is no doubt of the power of the court to make the modification. (*Cole v. Cole*, 142 Ill. 19.) In making the change the court should take into consideration, as it apparently did in the case at bar, the property and income of the parties, their ages, health and social conditions, and whether there are children dependent upon one or both of them for support."

We are of opinion that each of the four children should be treated alike in the disposition of their father's estate now pending in the probate court of Cook county, Illinois. We know of no reason under the facts or under the law why this should not be done. But if the decree in the instant case is carried out, the two younger children born of McConnell's second marriage will receive a very small amount while most of the estate will go to the two older children. Thomas F. McConnell died intestate and the statute of descent in this State provides how his property should be divided. The fact that the decrees of divorce were entered in California ought not to prevent the chancellor in the instant case from doing equity between the parties. If the divorce had been entered in the courts of this county, under the law announced in the *Herrick* case above quoted from, we think it clear there would be no such difficulty, but on the contrary, the chancellor could decree what was just and equitable in view of all the facts in the record. We think this situation is not affected by the fact that the decree for the support of the children was entered in California.

As above stated, the master found there was no fraud or advantage taken of Gladys McVeigh in procuring the execution of the agreement of March 18, 1935, and his conclusions were approved by the chancellor. Upon a consideration of all the facts in the

record, we are of opinion we would not be justified in disturbing such finding as being against the manifest weight of the evidence. *Pasedach v. Auw,* 364 Ill. 491; *Phillips v. W. G. N., Inc.,* 307 Ill. App. 1, and cases there cited.

For the reasons stated, the decree of the superior court of Cook county is reversed and the cause remanded with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded with directions.*

McSurely, P. J., concurs.

Matchett, J., took no part.