[L. A. No. 19234. In Bank. June 26, 1945.]

## HAZEL M. HOUGH, Respondent, v. JAMES V. HOUGH, Appellant.

Holbrook & Tarr and Leslie R. Tarr for Appellant.

Sullivan & Lane for Respondent.

CARTER, J.—On January 25, 1927, plaintiff commenced an action for divorce against her husband, the defendant herein. Thereafter, in August, 1927, plaintiff and defendant entered into an agreement providing for the settlement of their property rights. The community property, consisting principally of a going concern, was valued at $75,000. The agreement provided that defendant would pay plaintiff $35,000 and transfer to her other items of community property. The agreement further provided that plaintiff was to have the custody of the two minor children of the parties; that defendant would pay plaintiff $200 per month for her support ''during her life unless she re-marries, and if she re-marries the said monthly alimony payments to cease; . . .'' He also agreed to pay $50 and $75 per month for the support of the children.

Although no mention was made in the divorce complaint of the agreement, the waiver of answer filed by defendant recites that the agreement had been made and it was introduced in the divorce proceeding as plaintiff's exhibit. The interlocutory decree of divorce awarded the custody of the children to plaintiff and provided for their support, and ordered the payment to her of the sum of $35,000, and also provided for the payment to her of $200 per month ''for her own support and maintenance, beginning September 1st, 1927, and to continue during her lifetime unless she remarries; . . .,'' and the performance of some of the other terms of the agreement. It closes with the statement that the ''above provisions are in accordance with the property settlement filed herein, which said property settlement is hereby approved by the Court.'' The final decree entered in 1928 adopted the terms of the interlocutory decree. Defendant complied with the terms of the decree, except as to some items not here important, until in 1934, when he applied for a modification of the decree with respect to the $200 monthly payments to plaintiff, release from

support of one child who had become emancipated, and a reduction in the support payment for the other. The application was based upon changed circumstances (the financial losses and embarrassment of defendant). Plaintiff countered with an affidavit and an order to defendant to show cause why he should not be held in contempt for not paying the full amount for the past year (defendant answered that affidavit) and also an affidavit opposing the modification. She also presented the affidavit of her counsel in opposition to the modification in which it was claimed that the payments of $200 per month were to be in lieu of "an attempted" division of the community property. The issues of contempt and modification being joined, the court on May 11, 1934, made its order stating: "The plaintiff's objection to hearing order to show cause re modification on grounds the Court has no jurisdiction to modify provision of property settlement re support of plaintiff is denied. The Court finds the defendant has paid only $100.00 per month on support since April 1933 and is $1200.00 in arrears, and that contempt has not been willful. Arrearages to be paid at the rate of.$50.00 per month until paid; support of plaintiff reduced to $100.00 per month, commencing June 1, 1934, until further Order of Court, or until plaintiff remarries. Order for support of child to remain. These payments to be made direct. Plaintiff's motion for additional attorney fees denied." No appeal was taken from that order and it became final.

Thereafter, on September 25, 1942, plaintiff commenced the instant action on the agreement to recover the difference between the monthly payments of $200 provided for in the interlocutory decree and the monthly payments of $100 as modified by the order of May 11, 1934, which would have accrued since the modification except for it. Defendant pleaded the order of modification as res judicata. The court gave judgment for plaintiff, finding that "said contract was a property settlement agreement wherein the parties agreed upon the settlement of their respective property rights arising out of their marital relations"; that "plaintiff submitted said property settlement contract, herein sued upon, to the Court in said divorce proceeding for its approval and that said Court approved said contract and fully adjudicated and determined all rights arising under said contract"; that "it is not true that all the rights of plaintiff under said contract were adjudi-

cated at the time the Interlocutory Decree was modified on the 11th day of May, 1934.''

 Turning first to the relation between the separation agreement and the divorce decree, it appears to be well settled, that if the agreement is presented to the court in the divorce proceeding for adjudication, and the agreement, or a part thereof, is incorporated in the decree and made a part thereof, the part so incorporated is merged in the decree. (See *Warren* v. *Warren,* 116 Minn. 458 [133 N.W. 1009]; *Herrick* v. *Herrick,* 319 Ill. 146 [149 N.E. 820]; *Wallace* v. *Wallace,* 74 N.H. 256 [67 A. 580, 13 Ann.Cas. 293]; *Maginnis* v. *Maginnis,* 323 Ill. 113 [153 N.E. 654]; *Lilley* v. *Lilley,* 125 Conn. 339 [5 A.2d 849]; *Fleming* v. *Yoke,* 53 F.Supp. 552; (See *Reynolds* v. *Reynolds,* 53 R.I. 326 [166 A. 686]); *Worthington* v. *Worthington,* 224 Ala. 237 [139 So. 334]; *Adler* v. *Adler,* 373 Ill. 361 [26 N.E.2d 504]; *McVeigh* v. *McConnell,* 313 Ill.App. 75 [38 N.E.2d 962]; *Corbin* v. *Mathews,* 129 N.J. Eq. 549 [19 A.2d 633]; *Prime* v. *Prime,* 172 Ore. 34 [139 P.2d 550]; *Ex parte Jeter,* 193 S.C. 278 [8 S.E.2d 490]; *Rufner* v. *Rufner,* 131 N.J.Eq. 193 [24 A.2d 180]; *Applegate* v. *Applegate,* 135 N.J.Eq. 29 [38 A.2d 119]; *Gavette* v. *Gavette,* 104 Colo. 71 [88 P.2d 964]; *Holloway* v. *Holloway,* 130 Ohio St. 214 [198 N.E. 579].) In *Holloway* v. *Holloway, supra,* the issue involved was whether a holding for contempt for failure to pay support allowances under a divorce decree which was based upon a separation agreement incorporated therein would be an unlawful imprisonment for debt, and the court held it would not because the obligation was on the decree and not the agreement, stating at page 580:

''The problem here presented is not the enforcement of an agreement by contempt proceedings, but rather the enforcement by contempt proceedings of a decree which has incorporated therein an agreement to pay alimony. The distinction is important. A decree is valid as such regardless upon what it may be grounded. There is nothing in the law to render a decree invalid or ineffectual merely because it is predicated upon an agreement of separation, which agreement is incorporated bodily in the decree. A decree which incorporates an agreement is a decree of court nevertheless, and as soon as incorporated into the decree *the separation agreement is superseded by the decree, and the obligations imposed are not*

those imposed by contract, but are those imposed by decree, and enforceable as such. Once the contract is merged into the decree, the value attaching to the separation agreement is only historical." (Emphasis added.) And it should logically and justly follow therefrom that thereafter there is no right of action on the agreement incorporated in the decree. ▆ Generally, an action on a claim for money resulting in a decree in equity, such as a divorce decree, for the payment of money is merged in the decree, and no action thereafter lies upon the claim. The plaintiff must rely upon the judgment. (Rest., Judgments, § 47, comment g.) ▆ True, the basis for an alimony award arises out of the law imposed obligation of support rather than contract, but where the parties agree to a specified amount and the agreement is presented to the court, it becomes a part of the issues litigated. One of the precise issues involved in the divorce action is whether or not support payments should be ordered and if so the amount thereof. The agreement deals with identical questions. When it is incorporated in and made an operative part of the decree, there is no longer any occasion for its independent existence. Additional rights have been thereby gained by the one to whom the payments are to be made. The judgment is enforceable in the customary manner and also by contempt proceedings in a proper case. For those benefits, any disadvantages ensuing from the merger should justly be borne. The action of the court in ordering support payments in the terms of the agreement would be rather an empty gesture if the agreement itself stood alone and could be enforced regardless of the decree. The retained power of the court to modify the decree upon a showing of changed circumstances (Civ. Code, § 139) which is based upon sound policy would be seriously impaired, and any attempt on its part to give relief thereunder would be abortive if the parties could still enforce the agreement which had been made a part of the decree. True, an action on the contract would not carry with it the contempt method of enforcement, but the end result would be that a matter in which the state has a vital interest, the support allowance, would be outside the policy declared by the state. No such anomalous situation should be permitted to exist. It is aptly said in 39 Michigan Law Review 128:

"It is conceived that the basic questions in regard to the power of a court to modify decrees for alimony which are

based upon a contract cannot be solved by definition, and it is thought that the solution should lie in an evaluation of the ends which will be accomplished by the various theories and their social desirability.

"In the first place, should the fact that there is incorporated into the decree a contract of the parties as to support alter the power of the court over such decree? Assuming that the court has power by statute to modify a decree not based on contract, it would seem that in the view of most courts there is no sufficient reason to take the decree based on contract out of the operation of the statute as to the alimony provisions. *That the interest of the state in the marital status and the dissolution thereof is sufficient reason to support such a view hardly seems to require demonstration.* . . . The obligation to pay alimony or support money to a divorced wife is one peculiarly justified by considerations of social desirability and generally prescribed as a consequence to dissolution of the marital relation. Being a continuing obligation, and being subject to scrutiny of the courts as to fairness and adequacy at its inception, it should so remain and the contract of the parties should not be allowed to oust the court of power otherwise exercisable. Further, it must be remembered that the alimony obligation of the contract has become enforceable by contempt process due to incorporation in the decree and there seem to be strong reasons why such a drastic sanction should not be available without power in the court to regulate the extent of the obligation for whose enforcement the sanctions may be used. . . . If the parties are still bound under the contract, presumably it is still enforceable by an action thereon, although it may no longer be enforced by contempt proceedings. To hold that the contractual rights of the parties survive the decree seems to leave the party in whose favor modification was ordered in substantially the same position as before. Instead of the deep blue sea of contempt process, he is confronted with the devil of sheriff's sale. If it be conceded that justice demands modification of the agreement in any particular case, then it seems that the deserving party should be relieved not merely from the duty of paying under pain of contempt but from the duty of paying at all. The contractual obligation to pay support money may, therefore, properly be considered as having merged in the decree, since otherwise the

612

substance of the court's power to prescribe the alimony to be paid is substantially limited by the contract of the parties." (Emphasis added.) This does not mean that payments under property settlement agreements may be modified even though incorporated in the decree. They may not. (*Puckett* v. *Puckett*, 21 Cal.2d 833 [136 P.2d 1]; *Leupe* v. *Leupe*, 21 Cal.2d 145 [130 P.2d 697]; *Dupont* v. *Dupont*, 4 Cal.2d 227 [48 P.2d 677]; *Miller* v. *Superior Court*, 9 Cal.2d 733 [72 P.2d 868]; *Ettlinger* v. *Ettlinger*, 3 Cal.2d 172 [44 P.2d 540].) But in such a situation there is not the same underlying policy. The settlement of property rights should be final in order to secure stability of titles. Support allowances on the other hand should be subject to the discretion of the court as justice may require. It may well be reasoned that the provision of section 139 of the Civil Code authorizing the modification of support allowances becomes an implied part of the agreement when it is incorporated into the decree. It is said in *Smith* v. *Smith*, 94 Cal.App. 35, 47 [270 P. 463]:

"The holding of the cases there cited is to the effect that the *order* allowing alimony *is subject to revision* at any time. *The parties, in making the agreement, will be presumed to have entered into the same with the understanding that the trial court possessed the power to change or modify the award or provision made for support,* as the circumstances might require or as the justice of the case might necessitate, the distinction being drawn that in some states, there being no statute similar to our code, the power to change or modify must be reserved in the decree." (Emphasis added.)

The law of California is in harmony with the foregoing principles and policy. A husband and wife may contract with each other with respect to support and property rights. (See Civ. Code, §§ 158, 159; *Puckett* v. *Puckett, supra.*) An award of alimony in a divorce decree may be modified under appropriate circumstances (Civ. Code, § 139; *Leupe* v. *Leupe, supra; Puckett* v. *Puckett, supra*), and the incorporation of an agreement in the decree for the payment of support as long as it is not a property settlement agreement does not prevent a modification of the decree under appropriate circumstances. (See *Puckett* v. *Puckett, supra; Johnson* v. *Johnson,* 104 Cal.App. 283 [285 P. 902]; *Smith* v. *Superior Court,* 89 Cal.App. 177 [264 P. 573]; *Parker* v.

*Parker,* 22 Cal.App.2d 139, 141 [70 P.2d 1003]; *Innes* v. *Mc-Colgan,* 47 Cal.App.2d 781 [118 P.2d 855].) In *Lazar* v. *Superior Court,* 16 Cal.2d 617 [107 P.2d 249], the agreement authorized its incorporation in the decree, but this court in determining whether the agreement was sufficiently incorporated in the decree to justify a contempt citation for disobedience, stated at page 620:

"If a property settlement agreement is complete in itself and is *merely referred to* in a divorce decree or approved by the court *but not actually made a part* of the decree, then the provisions of such agreement cannot be enforced by contempt proceedings. (*Baxter* v. *Baxter,* 3 Cal.App.2d 676 [40 P.2d 536]; *Schnerr* v. *Schnerr,* 128 Cal.App. 363 [17 P.2d 749].) On the other hand, if, by the language of the agreement itself, it is shown that the intent was to make the agreement a part of a future divorce decree and, if the agreement is actually incorporated in the decree, then *such provisions become a part of the order of the court and may be enforced as such.*" (Emphasis added.) The essence of that statement is that the agreement becomes merged in the decree. It is not vital that the agreement so provides. The action of the parties and the court in the divorce proceeding may be determinative.

Reference has been made in some cases to the issue of whether or not the parties to an agreement incorporated in and ordered performed by the decree may have an independent right of action upon the contract. In some of these cases the issue was mentioned but not decided. (*Hughes* v. *Hughes,* 68 Cal.App. 195, 197 [228 P. 675]; *Newell* v. *Newell,* 28 Cal. App. 784 [154 P.32]; *Adams* v. *Adams,* 2 Cal.App.2d 173 [37 P.2d 729].) In others the agreement was not made an operative part of the decree. (See *Armstrong* v. *Armstrong,* 132 Cal.App. 609 [23 P.2d 50]; *Roberts* v. *Roberts,* 83 Cal. App. 345 [256 P. 826], where it was rejected; *Green* v. *Green,* 66 Cal.App.2d 50 [151 P.2d 679]; *Queen* v. *Queen,* 44 Cal. App.2d 475 [112 P.2d 755]; *Schnerr* v. *Schnerr,* 128 Cal.App. 363 [17 P.2d 749], dictum; *Robertson* v. *Robertson,* 34 Cal. App. 2d 113, 114 [93 P.2d 175]; *Makzoumie* v. *Makzoumie,* 50 Cal.App.2d 229 [123 P.2d 72]; *Ross* v. *Ross,* 1 Cal.2d 368 [35 P.2d 316].) Moreover, it was said in the Roberts case at page 351:

614

"But it is also the law that either husband or wife may enter into any agreement or transaction with the other respecting property which either might if unmarried (Civ. Code, sec. 158); and therefore, if after scrutinizing the agreement entered into between them for the settlement of their property rights and the circumstances under which it was made, the trial court ascertains and determines that the same is free from the illegal objects and influences above mentioned, it may affirm the agreement (*McCahan* v. *McCahan, supra* [47 Cal.App. 174 (190 P. 458)]), and the *force given thereto derives its sanction from the decree made by the court with a knowledge of the facts* (*Loveren* v. *Loveren,* 106 Cal. 509 [39 P. 801])." (Emphasis added.) The case of *Gummerson* v. *Gummerson,* 14 Cal.App.2d 450 [58 P.2d 394], overlooks the anomalous situation heretofore discussed and is therefore disapproved. The statement in *Griffith* v. *Superior Court,* 1 Cal.2d 381 [35 P.2d 371], is dictum.

From the foregoing discussion it is apparent that plaintiff had no right of action in the instant case on the portions of the agreement incorporated in and made an operative part of the divorce decree. Her remedy was on the decree including such aids as execution, contempt, and other enforcement process of the court together with an action on the decree. Hence, the judgment should be reversed.

Plaintiff asserts however, that the separation agreement was a property settlement agreement and hence not subject to modification, relying upon *Puckett* v. *Puckett, supra.* That contention she should have made and the record shows that she did, in the proceeding for the modification of the decree. The order of modification was adverse to her. No appeal was taken therefrom and it is now final. Necessarily, embraced within that proceeding was the issue of whether or not the divorce decree was based upon a property settlement agreement and hence not subject to modification. She does not in the instant action attempt to have the order of modification annulled or set aside as being in excess of the court's jurisdiction on the theory that the court had no jurisdiction to modify a decree based upon a property settlement agreement. But even if she had she could not prevail. It has been loosely stated generally in passing that the divorce court has no jurisdiction to modify a decree based upon a property settlement

agreement. (See *Ettlinger* v. *Ettlinger,* 3 Cal.2d 172, 178 [44 P.2d 540] ; *Wylie* v. *Wylie,* 26 Cal.App.2d 167 [79 P.2d 152].) However, that does not mean that the court does not have jurisdiction on an application for modification to decide correctly or incorrectly whether the decree is based upon a property settlement agreement, and is not subject to modification, or is based upon alimony or support allowance covenants, and is subject to modification. That is one of the basic issues to be determined by the court in modification proceedings. We said in *Puckett* v. *Puckett, supra,* 841:

"The essential issue to be determined is whether or not the agreement was a property settlement agreement, and the monthly payments ordered by the decree in effect and essence, a phase of the property settlement rather than merely alimony. It would be better practice to have that determination clearly and concisely made by the trial court when it renders the decree of divorce. Considerable confusion and uncertainty could be avoided in that fashion. The court could examine the agreement, the circumstances under which it was made, and the nature and value of the property as related to its division and the amount of the periodic payments giving consideration to the statutory rules on the subject." It is implicit from what was said in that case that on modification proceedings the issue may be settled. In various cases it has been assumed that the court may pass upon that issue or similar issues in such proceedings. (See *Ross* v. *Ross,* 1 Cal.2d 368 [35 P.2d 316] ; *Streeter* v. *Streeter,* 67 Cal.App.2d 138 [153 P.2d 441] ; *Black* v. *Black,* 203 Cal. 173 [263 P. 234] ; *Wylie* v. *Wylie,* 26 Cal.App.2d 167 [79 P.2d 152] ; *Wilder* v. *Wilder,* 214 Cal. 783 [7 P.2d 1032] ; *Hodgson* v. *Hodgson,* 6 Cal.App.2d 496 [44 P.2d 544] ; *Gosnell* v. *Webb,* 60 Cal. App.2d 1 [139 P.2d 985] ; *Atlass* v. *Atlass,* 112 Cal.App. 514 [297 P. 53].) On appeal from an order denying a motion for modification it is said in *Wallace* v. *Wallace,* 136 Cal.App. 488, 493 [29 P.2d 314]:

"Furthermore, this agreement was before the court upon the order for modification, and upon that hearing the court made the findings given above, to the effect that the payments directed to be made were not in the nature of alimony but was the balance of the sums due plaintiff under said contract of property settlement. That being a definite finding upon the

issue before the court, we are bound thereby. As the court said in *Atlass* v. *Atlass,* 112 Cal.App. 514 [297 P. 53, 54], 'Had the court found the provisions for support to have been in fact by way of property settlement, then the said provisions could not have been disturbed. . . .' There was ample evidence to support the finding in the instant case and we must therefore accept the same as true.''

We conclude therefore that the order modifying the divorce decree was res judicata upon the issue as to whether the provision in the agreement for the support of plaintiff was alimony or a part of the property settlement covered by the agreement.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.