**WESTINGHOUSE ELECTRIC CORPORATION, Plaintiff–Appellant,**

**v.**

**NEWMAN & HOLTZINGER, P.C.; Shaw, Pittman, Potts & Trowbridge; Chase, Rotchford, Drukker & Bogust, Law Corporation, Defendants–Appellees.**

No. 91–56533.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 1993.

Decided May 4, 1993.

Moses Lasky and Charles B. Cohler, Lasky, Haas, Cohler & Munter, San Francisco,

CA, for Westinghouse Elec. Corp., plaintiff-appellant.

Peter J. Kahn, Williams & Connolly, Washington, DC, for Newman & Holtzinger, P.C., defendant-appellee.

Ronald C. Redcay, Arnold & Porter, Los Angeles, CA, for Shaw, Pittman, Potts & Trowbridge, defendant-appellee.

Nowland C. Hong, Parker, Milliken, Clark, O'Hara & Samuelian, Los Angeles, CA, for Chase, Rotchford, Drukker & Bogust, Law Corp., defendant-appellee.

Before: WALLACE, Chief Judge, and O'SCANNLAIN and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Westinghouse Electric Corporation (Westinghouse) appeals the district court's dismissal of its action for breach of and tortious interference with an alleged agreement entered into during an underlying federal action. Westinghouse originally brought its action in California state court against three law firms, two of which—Newman & Holtzinger, P.C. (N & H) and Chase, Rotchford, Drukker & Bogust (Chase)—represented parties to the underlying federal action and were alleged to be parties to the agreement. The third law firm, Shaw, Pittman, Potts & Trowbridge (Shaw), was a party to neither the action nor the agreement. It was alleged to have conspired to breach the agreement. The law firms removed the action to federal court. The district court simultaneously denied Westinghouse's motion for remand and granted the law firms' motion to dismiss. We reverse, and remand so that the district court can remand the action to the state court.

**BACKGROUND**

In its state court complaint, Westinghouse alleged that N & H and Chase were counsel for Southern California Edison Company (SCE), a utilities company that sued West-inghouse in the underlying federal action (the SCE action). The SCE action was filed in 1983 in the Central District of California. SCE alleged that Westinghouse had misrepresented the useful life of steam engines it sold to the utility company. SCE's discovery requests encompassed some documents Westinghouse deemed confidential. According to Westinghouse's complaint:

> Westinghouse voluntarily offered to produce documents on condition that SCE and *defendants* [N & H and Chase] appearing on SCE's behalf *agree[d]* not to exhibit, deliver or disclose the documents to any one [sic] other than to specified parties, and not to use the documents for any purpose other than the SCE Case itself. Defendant Shaw, Pittman is not a specified party. *Defendants N & H and Chase expressly so represented and so agreed,* and in reliance upon these representations and agreements Westinghouse produced documents to N & H and Chase, doing so after the court, pursuant to the agreement of the parties, entered a protective order which imposed the condition on which Westinghouse agreed to produce them. Westinghouse accordingly produced the documents [emphasis added].

The district court entered that protective order on March 14, 1985. Westinghouse alleged that although Shaw was not a party to the SCE action, it knew of the protective order and its contents. Pursuant to an agreement between the three law firms, N & H and Chase filed the documents as public records in the district court and then informed Shaw that it could inspect and make copies of them from the court records. Once Shaw did so, it "hawked them among utility companies to stir up and foment litigation against Westinghouse and make use of the documents in instituting litigation."

The complaint further alleged that N & H and Chase "breached their representations to Westinghouse and agreement with it" by disclosing the documents to Shaw, and that the three firms committed an unspecified tort by causing the disclosure of those documents to others for an improper purpose. It was also alleged that N & H made false representations to help conceal the misuse of the infor-

mation, however the complaint did not spell out a separate action for fraud. Westinghouse prayed for damages in excess of "millions of dollars" for its costs in defending various lawsuits brought by other utility companies because of the law firms' actions.

Defendants removed the action under 28 U.S.C. § 1441(b) on the basis of federal question jurisdiction and under 28 U.S.C. § 1651 (the All Writs Act). The matter was assigned to the judge before whom the SCE action was (and is) pending. She dismissed this action. This appeal ensued.

## JURISDICTION AND STANDARD OF REVIEW

■ Removal of a case from state court to federal court raises questions of federal subject matter jurisdiction which are reviewed de novo. *Hellon & Assoc., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir.1992). The party seeking removal has the burden of establishing federal jurisdiction, and "[n]ormally, the existence of federal jurisdiction on removal must be determined from the face of plaintiff['s] complaint." *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1426 (9th Cir.1984); *see also Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir.1985). Of course, the district court's own order could also be considered. *Cf. Salveson*, 731 F.2d at 1427.

■ Also, the dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a question of law, reviewed de novo. *Oscar v. University Students Co-operative Ass'n*, 965 F.2d 783, 785 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992). Our review is limited to the contents of the complaint. *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 599, 121 L.Ed.2d 536 (1992). We take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. We will not dismiss a complaint unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.*

## DISCUSSION

The law firms claim that Westinghouse's action is completely preempted by the Federal Rules of Civil Procedure and that both removal and dismissal were, therefore, proper. They also assert that removal can be justified under the All Writs Act. 28 U.S.C. § 1651(a).

### A. Preemption

In *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), the Supreme Court set forth the guiding principles that govern the removal of federal question cases:

> Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

*Id.* at 392, 107 S.Ct. at 2429 (citation and footnotes omitted). In addition, "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393, 107 S.Ct. at 2430.

■ If Westinghouse were really seeking to enforce the district court's protective order during the pendency of the SCE action, that court would certainly have original jurisdiction. "[T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court." *In re Debs*, 158 U.S. 564, 594, 15 S.Ct. 900, 910, 39 L.Ed. 1092 (1895); *see also* Fed.R.Civ.P. 37(b)(2) (pro-

viding federal courts with the authority to apply sanctions, including contempt, for the failure to comply with discovery orders); *Id.* Advisory Committee Note, 1970 Amendment, subdivision (b) ("Rule 37(b)(2) should provide comprehensively for enforcement of all [discovery] orders," including Rule 26(c) protective orders.). However, that does not dispose of this case.

Westinghouse asserts that its complaint contains nothing more than two California claims—breach of contract and a related tort claim. The law firms counter that the complaint really disguises an action to enforce the district court's protective order and that the order may only be enforced through a motion for sanctions under Federal Rule of Civil Procedure 37(b) for failure to comply with a discovery order. Westinghouse seeks to avoid that recharacterization by arguing that it is not suing on the protective order, but rather on a contract that *"preceded* the stipulation thereafter entered in court."

From the face of the complaint it appears that Westinghouse has successfully pled the breach of a separate and independent agreement between itself and two law firms—N & H and Chase. The complaint suggests that N & H and Chase for themselves and not merely as SCE's representatives entered into the non-disclosure agreement. Although Westinghouse alleges that it produced documents *after* the protective order "imposed the condition on which Westinghouse agreed to produce [the documents]," it does not say that production was solely based upon that order. To infer that it must have been, we would have to commit the post hoc, ergo propter hoc fallacy. Moreover, the complaint does not incorporate the protective order by reference as the contract sued upon. Finally, the complaint does not say that the obligation was imposed solely by the protective order, and the order itself only directly runs against the parties to the litigation, and others who agree in writing to be bound or who are deemed bound when they get access to material. There is no allegation that the law firms agreed to the order's own provisions. While N & H and Chase probably did, there is nothing to indicate that Shaw did. Thus, reading the pleading in the light most favorable to Westinghouse, it appears that West-

inghouse did plead the breach of an antecedent contract, rather than a violation of the protective order. Whether it can *prove* the existence of that contract is a different question; one that the federal courts cannot now decide.

We recognize that the "complete preemption doctrine ... provides an exception to the well-pleaded complaint rule." *Stikes v. Chevron USA, Inc.,* 914 F.2d 1265, 1267 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2015, 114 L.Ed.2d 101 (1991). For example, in the context of suits by employees against their employers, section 301 of the Labor Management Relations Act (LMRA) completely preempts state law claims either when those claims are " 'founded directly on rights created by collective-bargaining agreements,' " or when a claim based on a state law right " 'requires the interpretation of a collective-bargaining agreement.' " *Hayden v. Reickerd,* 957 F.2d 1506, 1509 (9th Cir. 1992) (citations omitted); *see also Stikes,* 914 F.2d at 1268. However, as the Supreme Court has explained, this corollary has been applied primarily to preemption by section 301 of the LMRA, but has also been applied to ERISA claims, as well as actions for possession of Indian tribal lands. *Caterpillar,* 482 U.S. at 393 n. 8, 107 S.Ct. at 2430 n. 8. The law firms insist that we must apply this doctrine to Westinghouse's complaint. We do not agree. We find no direct authority for the proposition that it applies to Federal Rules of Civil Procedure claims, and we need not now determine whether it does. Even in an area where the need for preemption is as powerful as it is in labor relations, the doctrine might not justify removal.

Thus, in *Caterpillar,* the plaintiff employees were originally covered by a collective bargaining agreement (CBA), but later assumed positions outside the bargaining unit, and finally were returned to unionized positions and laid off. *Id.* at 388–89, 107 S.Ct. at 2427–28. The employees sued Caterpillar in state court and asserted only state claims. They alleged that during the time they had held non-union positions, they entered into individual employment contracts with Caterpillar and that it was those individual agreements that Caterpillar breached when it ter-

minated them. *Id.* at 389–90, 107 S.Ct. at 2427–28. Caterpillar removed the action on the ground that the individual contracts " 'were, as a matter of federal substantive labor law, merged into and superseded by the ... collective bargaining agreements.' " *Id.* at 390, 107 S.Ct. at 2428.

The Supreme Court held that removal was improper. The employees' claims were independent of the CBA. The complaint did not rely on the CBA indirectly, nor did it "address the relationship between the individual contracts and the collective agreement." *Id.* at 395, 107 S.Ct. at 2431. The alleged individual contracts did not merge into the CBA. "[A] plaintiff covered by a [CBA] is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a [CBA]." *Id.* at 396, 107 S.Ct. at 2431.

Moreover, the fact that Caterpillar might have asserted a defense under the CBA provided no basis for removal. A defendant "cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Id.* at 399, 107 S.Ct. at 2433. *See also Hayden,* 957 F.2d at 1509 (employee's state law battery claim is independent of his CBA, and not preempted); *cf. Stikes,* 914 F.2d at 1269 (employee's state law claim for violation of California's constitutional right to privacy was properly removed as completely preempted).

Like Caterpillar, the law firms argue that even if there had been a separate contract, it was merged into and superceded by another document—the protective order. They rely primarily on *Hough v. Hough,* 26 Cal.2d 605, 160 P.2d 15 (1945), for the proposition that where an agreement between litigating parties is incorporated into a court order, the agreement is merged into that order. In *Hough,* the parties to a divorce action entered into a property settlement. That settlement agreement was specifically incorporated into the court's final decree. 160 P.2d at 16. The court held that once the agreement was incorporated into the decree, it lost any "independent existence." 160 P.2d at 17.

A merger of that type would occur if the terms of the agreement were specifically incorporated into the final decree, but not if the court merely referred to the agreement in the decree. 160 P.2d at 19. In the case of a merger, a party to the underlying agreement could not bring a separate action to enforce the terms of the agreement: "Her remedy was on the decree including such aids as execution, contempt, and other enforcement process of the court together with an action on the decree." *Id.*

Even if *Hough*'s merger concept applies to contracts related to federal court orders, this case is quite unlike *Hough.* The protective order had no incorporation provision, and the law firms did not ask that their independent agreement become part of the order. Indeed, the only possible reference to a precedent agreement is the order's title, "Protective Order On Consent." Also, it is perfectly conceivable that, as alleged, SCE's attorneys independently promised Westinghouse that they would not disclose to the public any documents produced by Westinghouse. Finally, to paraphrase *Caterpillar:* If a law firm "wishes to dispute the continued legality or viability of a pre-existing ... contract" because Westinghouse's rights are covered by the protective order, "it may raise this question in state court." 482 U.S. at 397, 107 S.Ct. at 2432. *See also Lubrizol Corp. v. Exxon Corp.,* 871 F.2d 1279, 1282–83 (5th Cir.1989) (although only the issuing court can exercise jurisdiction over a contempt proceeding, other courts can adjudicate separate claims).

So, with or without *complete* preemption, we must ask whether Westinghouse has pled a state cause of action for breach of contract, or whether its complaint is merely an action to enforce the protective order. As we have already stated, Westinghouse's complaint *does* allege an agreement by N & H and Chase to prevent the public disclosure of Westinghouse documents. That agreement, on the face of the complaint, is independent of the protective order. While independent agreements of that type may be unusual, they are not inconceivable. The agreement would make the law firms directly liable to Westinghouse for a breach of *its* terms. The

order would look to the court to impose sanctions for a violation of *its* terms.

In sum, the district court erred when it failed to read the complaint in the light most favorable to Westinghouse. Because the complaint does allege an independent claim for breach of contract, the action should not have been removed on the ground of complete preemption; it must now be remanded.

### B. The All Writs Act

■ The law firms assert that the All Writs Act provides an independent source of removal jurisdiction to the district court. The Act states: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Supreme Court

> has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained....

*United States v. New York Tel. Co.,* 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977).

Suffice it to say that we have held that the Act "does not operate to confer jurisdiction ..., since it may be invoked by a district court only in aid of jurisdiction which it already has." *Stafford v. Superior Court,* 272 F.2d 407, 409 (9th Cir.1959), *cert. denied,* 362 U.S. 979, 80 S.Ct. 1064, 4 L.Ed.2d 1013 (1960). Accordingly, our analysis under the Act is essentially the same as that under the complete preemption rubric: The federal court's jurisdiction depends on whether Westinghouse's complaint alleges a contract breach independent of the protective order. Because it does, the state court adjudication need not affect the interpretation or the enforcement of the protective order and will not frustrate that order. The Act does not apply.

* Ronald H. Brown is substituted for his predecessor, Barbara H. Franklin, as Secretary of Com-

### CONCLUSION

The mere fact that a district court has issued a protective order regarding disclosure of confidential information does not preclude the existence of a separate and independent non-disclosure agreement. As with the contract alleged here, that agreement might directly bind persons not bound by the order itself. The agreement may even have more or less encompassing terms than the order. It follows that the agreement may be enforced without affecting the order or interfering with the court's enforcement of that order.

We are not unaware of nor are we insouciant about the opportunities this could offer to ill disposed parties and their counsel. However, we are satisfied that both the federal and the state courts will be able to ferret out false claims. We are also satisfied that they will be sensitive to any problems, for they will neither wish to invade each other's province nor wish to needlessly undertake the enforcement of each other's orders. We also believe that the rectitude of the bar will help avoid baseless claims of separate agreements. If, as is occasionally sadly so, rectitude fails to deter the sharp practices of some, suitable sanctions should stop them.

The judgment of the district court is reversed, and that court shall remand this case to the California Superior Court from whence it came.

REVERSED with instructions to RE-MAND.