Ireland *v.* Ireland.

Hannah Ireland

*v.*

Samuel Ireland and Amanda Steelman.

To a bill filed by the widow of I., against his devisees, for an assignment of her dower in the lands devised, the defendant pleaded an agreement which had been made between the complainant and I., without the intervention of trustees, some years before the death of I., whereby the complainant had agreed to live apart from her husband, and that he should "have to himself, his heirs and assigns, all manner of property, both real and personal," which he then had, or should thereafter acquire. The plea was overruled, because it did not appear by it, first, that the complainant understood, at the time she entered into the agreement, that she was contracting to relinquish her dower in her husband's lands; or second, that the complainant was adequately compensated for such relinquishment; or third, that equity and good conscience demand that the agreement shall now be enforced against her.

On bill and plea.

The object of the bill is to procure a discovery of the lands of which Joseph Ireland died seized, and of the profits that the defendants, his devisees, have had therefrom since his death, in 1884, and also payment to the complainant, who is his widow, of her proper share of those profits, and the assignment to her of her dower in said lands. To the suit the defendants interpose a plea which, excepting some formal parts, is as follows:

"That the said Joseph Ireland and Hannah, his wife, the complainant, were unable to live happily together, in consequence of which they made and executed an agreement of separation, in form and terms as follows:

"'This indenture, made this twenty-eighth day of May, in the year of our Lord one thousand eight hundred and seventy-two, between Joseph Ireland, of Egg Harbor township, in the county of Atlantic and state of New Jersey, of the first part, and Hannah Ireland, his wife, of the second part; *whereas*, unhappy differences subsist between Joseph Ireland and Hannah, his wife, as aforesaid, for which reason they agreed to live separate.

"'Now this indenture witnesseth that the said Joseph Ireland, in pursuance of mutual agreements between him and his said wife, doth hereby, for himself, his heirs, executors and administrators, covenant and agree to and with the said Hannah, his wife, as follows: that he, the said Joseph Ireland, will per-

Ireland *v.* Ireland.

mit the said Hannah, from henceforth, during her life, to live separate from him, and to stay and reside at such place or places as she pleases, and to carry on and follow such trade and business, as if she were a *feme sole,* as to her may seem fit and proper; and that he will not reclaim or molest her, or any other person or persons, on her account, in any manner or way whatsoever, for receiving or entertaining her.

" 'And it is hereby covenanted and agreed by and between the parties of the first and second part that the said Joseph Ireland shall have to himself, his heirs and assigns, all manner of property, both real and personal, of whatsoever nature and description, and wheresoever situate, which was his at the time of his marriage with the said Hannah, or which he has acquired since, or which he may [hereafter] acquire. And also that the said Hannah have to herself, her heirs and assigns, all manner of property, both real and personal, of whatever nature and description, and wheresoever situate, which was hers at the time of her marriage with the said Joseph Ireland, or which she has acquired since, or which she may hereafter acquire.

" 'And the said Joseph Ireland, for himself, his heirs and assigns, doth hereby covenant and agree with the said Hannah that he will pay unto her, upon the execution of the within indenture, fifteen hundred dollars, all of which the said Hannah doth hereby agree to accept and take in full satisfaction for her support and maintenance, and of all alimony during her coverture.'

" That after the date of the said agreement they lived separate and apart, under and according to its provisions, which were complied with by both parties thereto during the lifetime of the said Joseph Ireland. That he paid the sum of fifteen hundred dollars, required to be paid by him by the said agreement, and he suffered her always to live apart from him, and employ her time, and control and use her separate estate as she pleased, without any interference whatever on his part.

" That, having confidence that she would conform to the said agreement in all things on her part to be performed after, as well as before, his death, he made and duly published his last will and testament, wherein and whereby he devised the said premises in question to the said defendants.

" And these defendants charge that the said complainant, under and by virtue of the said agreement, fully performed in all its parts by both parties thereto during the lifetime of the said Joseph Ireland, has in law, equity and good conscience, released her dower in the said premises, and in all and every part of the real estate whereof he died seized."

*Mr. John F. Harned,* for the complainant.

*Mr. David J. Pancoast,* for the defendants.

THE CHANCELLOR.

The plea, it will be noticed, presents the following facts: Joseph Ireland and his wife, the complainant, were unable to

Ireland *v.* Ireland.

live happily together, and consequently agreed to live apart, and upon arriving at such agreement, entered into a written contract with each other, without the intervention of trustees, in which Ireland undertook that he would permit the complainant, during her life, to live separate from him, reside where she pleased, and follow any trade or business as a *feme sole*, and that he would not molest her, or any other person because of her; and both parties agreed that each should have to him or her, and his or her heirs and assigns, all their respective properties, real and personal, then acquired or thereafter to be acquired; and Ireland further agreed to pay the complainant, upon the execution of the agreement, $1,500, which she was to accept in full satisfaction for her support and maintenance or alimony during her coverture. Upon the execution of this agreement, Ireland paid to complainant $1,500, in part performance of the understanding, and the parties lived apart to the death of Ireland, and, to that time, in all respects, performed the agreement.

The defendants now claim that the contract, thus made and performed, will be sustained in equity, as a release of dower in the defendants' land. At law, upon the principle of mutual disability and upon the presumption that the wife is *sub potestati viri*, a husband and wife may not contract with each other, and a wife cannot execute a valid release of dower, in the real estate of her husband, in any other way than by joining with him in a conveyance to a third person. *Carson* v. *Murray, 3 Paige 503; Emery* v. *Neighbour, 2 Hal. 142.*

The statute of this state, leaves the ability of the husband and wife to contract, as it was at the common law. Its language is as follows : "Nor shall anything herein enable the husband or wife to contract with or sue each other, except as heretofore." *Rev. p. 639 § 14.* In construing this language, Chief-Justice Beasley, in *Woodruff* v. *Clark, 13 Vr. 198,* says that its "object was to leave the husband and wife, touching their capacity to bargain together, on the ancient footing of the common law. The clause is virtually a legislative declaration that, as heretofore, they may enter, *inter sese*, into equitable agreements, but not into legal agreements. It was obviously intended that the court of equity

should, as it had always done prior to the amplification of the rights of the wife, exercise a supervision over the engagements of married persons."

Courts of equity deal with agreements for the separation of husband and wife with the greatest caution, because the contract of marriage is solemn, sacred, and useful to maintain inviolate.

The authorities are uniform in holding that a provision, by any instrument, for the separate maintenance of the wife in the event of any future separation, whether with or without the intervention of trustees, will not be enforced either at law or in equity; but that where such agreements are made with trustees and operate *in præsenti,* although they will not be enforced as to the separation, they will, as a general rule, be enforced in equity so far as to compel the husband to perform the accessorial agreement for the maintenance of the wife. And a number of cases hold that these last-mentioned agreements, when made directly between husband and wife, will be enforced against the husband. *Calame* v. *Calame, 10 C. E. Gr. 548.*

In the last case cited, the Court of Errors and Appeals of this state, enforced, against the husband, his agreement for maintenance as part of a decree of divorce, where the agreement was made directly between husband and wife.

The chief-justice, who delivered the opinion of the court in the case, says: " I do not mean, however, that every agreement which is thus made will be supported. The court should undoubtedly look into these arrangements and their surroundings ; but when it appears that the separation of the wife, forming the ground-work of the agreement, was justifiable, and the provision is suitable, to this extent it is, in my judgment, safe to say that the contract should be upheld."

The object of the plea in the case before me is to enforce an agreement made directly between husband and wife, against the wife. Conceding, for the purposes of this case, that the court may countenance such enforcement, it is clear that it should do so only in a case which, after a cautious examination of all the circumstances which surround and enter into the agreement,

appears to be fair to the wife, and also to be supported by some
equity in favor of the husband or those who claim under him.

In *Farmer* v. *Farmer, 12 Stew. Eq. 215,* Vice-Chancellor
Van Fleet says : "A wife may bestow her property by gift
on her husband, or she may make a contract with him which
will be upheld in equity, but such transactions are always
examined by courts of equity with an anxious watchfulness and
caution and dread of undue influence ; and, if they are required
to give sanction or effect to them, they will examine the wife in
court and adopt other precautions to ascertain her unbiased will
and wishes."

When a husband comes into court and asks for the enforce-
ment of a contract that he has made directly with his wife, or
when those who stand in his place so come, the burden is upon
him, or them, to show the fairness of the agreement and the
equities which call for its enforcement.   The wife is presumed
to be *sub potestati viri,* and the affirmative is with the husband,
and those who represent him, to show that the contract was fair,
open, reasonable, and well understood.   *Cowee* v. *Cornell, 75 N.
Y. 91.*   The plea must aver that which the husband must prove
affirmatively to show a complete equitable defence.  *Story's Eq.
Pl. § 665.*

The agreement of the complainant and her husband to live
apart, merely because of unhappy differences, on the ground of
public policy, affords no consideration, either in law or equity,
for her surrender of interest in his property.   It does not appear
that the complainant had property in which her husband had
rights which he could surrender.   So that his release would con-
stitute a consideration for hers.   The $1,500, which was paid to
her upon the execution of the agreement, was given and received
in satisfaction "for her support and maintenance, and of all
alimony during her coverture," not for a release of dower.
After the payment of this money, although the husband lived
for more than twelve years, the wife kept her agreement, and did
not ask him for support and maintenance.

What substantial benefit, then, which can be held to be a con-
sideration for the release of her dower, did the wife derive from

the agreement? I fail to perceive any. The proposition is resolved to this: that a court of equity shall compel the wife to give up a valuable estate in her husband's lands solely because she agreed with him, when she was under his control, to do so. Such a proposition is not addressed to good conscience or otherwise possessed of equitable features, which will require or secure its maintenance in this court.

But the plea is subject to the further criticism that it does not aver that the complainant understood that she was relinquishing her dower in her husband's lands. The language of the agreement is general, and does not directly suggest that it is intended to include a release of dower.

Counsel for the complainant, upon the argument of this case, insisted, and with some force, that the language of the agreement is not sufficiently clear to enable a court to construe it as a relinquishment of dower. Did Mrs. Ireland understand that she was agreeing to release dower? I think that the averments of the plea should show that she did. The language of the agreement is so general that it is impossible for me to hold it to be of such a character that she must be presumed to have understood it as a release of dower.

The result of my consideration of these two objections is that Mrs. Ireland may unwittingly have agreed to release her dower without adequate compensation for so doing. The plea should have shown that she understandingly agreed to give up her dower, and that she did so for adequate compensation, thus presenting to the court for enforcement a fair and reasonable contract; and also that such a contract was so acted upon by the husband, or those who claim under him, that a court of good conscience should require the wife to perform it upon her part.

The plea will be overruled, with costs.