AGNES NANCY APPLEGATE, complainant-appellant,

*v.*

JOHN REGINALD APPLEGATE, defendant-respondent.

[Argued February 7th, 1944.  Decided April 13th, 1944.]

*Mr. Harry Kay* and *Mr. Richard Spitz,* for the complainant-appellant.

*Mr. Bernard A. Reilly,* for the defendant-respondent.

The opinion of the court was delivered by

CASE, J.

On October 27th, 1943, appellant filed a bill of complaint in Chancery alleging that on May 8th, 1934, she secured a final decree for divorce against the defendant; that complainant was therein allowed her costs and fees in the sum of $349.77 and interest; that a writ of execution thereon issued June 22d, 1934, and was later returned with a levy on personal property annexed; and that the respondent has not paid the said fees and costs although, according to the infor-

mation of the complainant, he receives earnings of $60 per week. That is stated as the first cause of action. The bill contains a second cause of action in which the complainant seeks specific performance of a written agreement dated July 15th, 1932, wherein the husband agreed to pay her for her support the sum of $15 weekly. The prayers for relief are that the defendant should answer; that an account be taken of the amount due on the agreement; that the defendant be decreed and directed to pay the arrearage thereon; that an order be made directing the defendant to appear and make discovery regarding his income and estate; that a writ of execution issue against wages and income to satisfy said fees, costs and arrearage, and that "a decree may be made specifically enforcing the performance by defendant of the maintenance agreement." On the filing of the bill an order went directing the defendant to show cause why execution should not issue calling on the sheriff of Essex County to make from the defendant's wages, salary and income the sum due for fees, costs and interest. On a continuance of the return day the court made an order determining that the first part of the bill disclosed no cause of action, that Chancery had no jurisdiction to grant the relief prayed for in the second part and that the order to show cause and the bill of complaint should be dismissed. That order is now under appeal.

As to the first cause of action: Appellant cites in support of her procedure *R. S. 2:29–57* which gives a Chancery money decree, with certain exceptions, the effect of a judgment at law in the Supreme Court, and *R. S. 2:29–110* the pertinency of which is not apparent because it authorizes a judgment creditor in an action at law to file a bill for discovery in Chancery. Without going into other irregularities and doubts, it is enough to say that the judgment upon which appellant desires to proceed is a Chancery decree and that, by the logic of the situation as well as by analogy to a like proceeding at law, the proceeding in aid of execution is supplemental to the original suit and should be appended thereto by way of petition, as was done in *Whitfield v. Kern, 125 N. J. Eq. 515*, or by some appropriate form of dependent action. The statutory reference in *R. S. 2:29–110, supra*, to a bill in

Chancery has relation to a Chancery proceeding in aid of a law judgment and in such an instance the application to Chancery would, of course, find there no earlier proceeding to which it could attach. *Cf. Baader* v. *Mascellino, 116 N. J. Eq. 126,* and *Cohen* v. *Dwyer, 133 N. J. Eq. 226; affirmed, 134 N. J. Eq. 350,* which were on bills for discovery in aid of law judgments.

The second cause of action does not seek alimony; it is a bill for specific performance of an agreement for the wife's support made a year and a half before the institution of the divorce proceedings. It seeks compulsion for present and future performance of the agreement and a money decree for arrearages calculated at the time of the filing of the bill at $6,967.50 plus interest.

The agreement sued upon recited that the husband had for a time then past refused to live with the wife and that the parties had not during that time cohabited; that the husband recognized his legal obligation for his wife's support and maintenance; that he desired to avoid controversies and that consequently, to the end that the parties might live separately without molestation one from the other, the husband agreed to pay $15 weekly to the wife so long as the then existing financial status of the parties should continue, until the wife's remarriage "or according to the terms of an order made in any proceedings had between the parties by any court of competent jurisdiction in the premises;" and the wife agreed not to molest the husband or to contract debt in his name; and both parties further agreed that the agreement should not be a bar to any action affecting their marital relations; that they would be bound by any order made in a competent proceeding and that "in lieu of specific reference thereto" the provisions of the agreement should continue in force and effect.

That was purely an agreement between parties. No court has taken cognizance of it or given sanction to it; and nothing is now asked of the court with respect to it except that the court will enforce it according to its terms, including the granting of a money decree for past due sums.

It has been settled by the repeated decisions of this court that a bill does not lie for the specific performance of such a contract.

"Our decisions hold uniformly that alimony is a subject specifically committed to the Court of Chancery and arising from the present or past status of the parties as husband and wife. The jurisdiction not only exists while that relation persists, but by the express language of the Divorce Act (*Comp. Stat., p. 2035* § *25*), continues after decree of divorce; and it necessarily includes the power, in cases where the wife is entitled to alimony, to regulate the amount of such alimony from time to time, to supervise agreements between the parties in that regard, to enforce them if deemed just, and to decline to recognize them otherwise. *Calame* v. *Calame, 25 N. J. Eq. 548.* But these powers grow out of the existing or pre-existing marital status, and are not controlled by the rules of specific performance of contracts. The bill in this case being framed as a bill for specific performance, was properly dismissed as such, and the decree will accordingly be affirmed, but without prejudice to an application for suitable alimony, on which application the wife may legitimately ask the court to recognize the agreement as a basis for its award, and the court will recognize it or not as it thinks proper." *Apfelbaum* v. *Apfelbaum, 111 N. J. Eq. 529;* and an order for alimony subsequently made in Chancery was affirmed here, *115 N. J. Eq. 555.*

In *Second National Bank of Paterson* v. *Curie, 116 N. J. Eq. 101,* the husband and wife had for years lived an unhappy marital existence. The wife resolved to leave her husband and seek relief in court, but a settlement agreement was reached and the wife forebore to separate herself from her husband and to sue. The agreement named the Second National Bank of Paterson as trustee and the husband delivered to the trustee $235,000 upon the provision that the trustee should pay the net income of $12,000 to the wife. Upon the failure of the fund to produce that income the trustee filed its bill seeking the advice of the court and the husband and wife filed counter-claims, each antagonistic to

the other, the husband praying that the trust be declared invalid and the wife praying that specific performance be decreed of that paragraph of the agreement in which the husband undertook to add to the fund such further securities as were necessary to produce the stipulated net income. Chancery decided that the husband's covenant was enforceable in that suit. The Court of Errors and Appeals unanimously reversed the decision. The opinion, written by Mr. Justice Parker, said:

"The third and fourth points are that paragraph 10, quoted in the opinion of the Vice-Chancellor, *supra,* is in effect a contract between husband and wife, and is not fair and just; and that the Court of Chancery erred in decreeing specific performance of the trust agreement. We take the view that the agreement in these aspects was in its essence and purpose an agreement for the reasonable and suitable support of the wife according to her station and according to her husband's means and ability to support her, and that it comes therefore under the general class of agreements for maintenance where husband and wife are living apart and, as such, is subject to the control of the Court of Chancery, but not by way of specific performance. *Apfelbaum* v. *Apfelbaum, 111 N. J. Eq. 529.* The agreement itself may be regarded by the court as evidential with regard to the amount of money to be paid, though not controlling in that regard:"

In *Aiosa* v. *Aiosa, 119 N. J. Eq. 385,* the facts were that the parties, husband and wife, had been married and had lived together for a period of twenty-four years when they separated and agreed, in writing, to live apart. By the terms of the agreement the husband was to pay the wife the sum of $8 weekly for her maintenance and support. The wife later filed a bill in Chancery alleging default in the payment of the weekly sums and praying that the husband be compelled to comply with the terms of the agreement. Chancery accordingly entered a decree for a specific performance of the separation agreement. This court reversed that determination. The opinion, written by Mr. Justice Donges, said:

"In *Apfelbaum* v. *Apfelbaum, 111 N. J. Eq. 529,* this court said:

" '* * * and our decisions hold uniformly that alimony is a subject specifically committed to the Court of Chancery and arising from the present or past status of the parties as husband and wife. * * * But these powers grow out of the existing or pre-existing marital status, and are not controlled by the rules of specific performance of contracts.'

"To the same effect is *Second National Bank* v. *Curie, 116 N. J. Eq. 101,* where Mr. Justice Parker said that such agreements are 'subject to the control of the Court of Chancery, but not by way of specific performance.'

"In the instant case there was no attempt to show the reasonable needs of the wife or the ability of the husband. The decree was for a specific performance of the agreement, and under the settled law of this state was not within the competence of the court and the bill should have been dismissed."

*Phillips* v. *Phillips, 119 N. J. Eq. 462,* was a case in which a husband and wife had lived together for over fourteen years when the husband, as was alleged, deserted the wife. Five years later the wife filed her petition in Chancery for divorce. Thereafter, but before final decree, the parties entered into a written agreement providing for the payment of $10,000 annually to the wife and for the payment of certain sums upon the entry of the final decree and periodically thereafter. Nine years after the making of the agreement Mrs. Phillips went into the Court of Chancery with a bill asking specific performance by her former husband of the terms of the agreement, including the payment of the arrears. The issue arose in Chancery upon the defendant's separate defense that the agreement was not subject to specific performance in Chancery and the complainant's motion to strike that defense. Notwithstanding our decisions in the *Apfelbaum* and the *Curie Cases, supra,* Chancery considered that the agreement was enforceable as such and made an order striking the defense. On appeal we reversed. At the cost of repeated quotation of words and ideas, which nevertheless will serve to show the settled and reiterated view of this court, we quote from the opinion written therein for the court by Mr. Justice Donges:

"We deem it necessary only to deal with the third defense, that the Court of Chancery is without jurisdiction to decree specific performance of an agreement to pay alimony.

"In *Apfelbaum* v. *Apgelbaum, 111 N. J. Eq. 529*, this court said that the jurisdiction of the Court of Chancery over the matter of alimony 'not only exists while that relation persists, but by the express language of the Divorce Act (*Comp. Stat. p. 2035 ¶ 25*), continues after decree of divorce; and it necessarily includes the power, in cases where the wife is entitled to alimony, to regulate the amount of such alimony from time to time, to supervise agreements between the parties in that regard, to enforce them if deemed just, and to decline to recognize them otherwise. *Calame* v. *Calame, 25 N. J. Eq. 548*. But these powers grow out of the existing or pre-existing marital status, and are not controlled by the rules of specific performance of contracts. The bill in this case being framed as a bill for specific performance, was properly dismissed as such, * * *.'

"And in *Second National Bank* v. *Curie, 116 N. J. Eq. 101*, this court said:

" 'We take the view that the agreement in these aspects was in essence and purpose an agreement for the reasonable and suitable support of the wife according to her station and according to her husband's means and ability to support her, and that it comes therefore under the general class of agreements for maintenance where husband and wife are living apart and, as such, is subject to the control of the Court of Chancery, but not by way of specific performance. *Apfelbaum* v. *Apfelbaum, 111 N. J. Eq. 529*. The agreement itself may be regarded by the court as evidential with regard to the amount of money to be paid, though not controlling in that regard; same case, No. 60, October term, 1933. *115 N. J. Eq. 555.*' See, also, *Aiosa* v. *Aiosa, 119 N. J. Eq. 385*.

"So here, the prayer is for specific performance of the agreement for alimony, and the third defense was good and should not have been struck. It is, in fact, dispositive of the case.

"Finding, as we do, that the court was without jurisdiction

to entertain the bill, it is not necessary to determine the other questions involved.

"The order is reversed, and the cause remanded to the Court of Chancery with instructions to dismiss the bill of complaint."

It will be observed that the last mentioned decision was in a case where the complainant sought current and future payments, and also arrears, under a maintenance agreement made between parties who at the making of the agreement were husband and wife but who, before the suit for performance, were divorced by a decree which did not take cognizance of the agreement; incidents which attach also to the case now under review.

In *Corbin* v. *Mathews, 129 N. J. Eq. 549,* the bill of complaint had sought and Chancery had ordered that the defendant pay the complainant the accrued arrearages under a separation agreement made between them when they were husband and wife and before the rendition of a decree for divorce in another state. There were other legal incidents but this court reversed and the opinion, with unanimous support, stated the rule pertinent to the present case as follows: "Our Court of Chancery will not enforce specific performance of a contract to pay alimony; where it has jurisdiction it will regulate the amount of alimony from time to time, supervise agreements between the parties in that regard, enforce them if just and decline to enforce them otherwise."

Fortifying the views expressed above are our decisions in *Mayhew* v. *Chapman, 117 N. J. Eq. 27; Richman* v. *Richman, 129 N. J. Eq. 114; Armour* v. *Armour, 131 N. J. Eq. 110,* and a further phase of the last cited case, *132 N. J. Eq. 298.*

The order below will be affirmed, but without prejudice to an application by the wife for suitable alimony and without prejudice to an appropriate proceeding in aid of execution.

*For affirmance*—PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 13.

*For reversal*—THE CHIEF-JUSTICE. 1.