The bill is two-fold in its aspect and purpose:
1. On behalf of the infant complainant it seeks a decree, (a) compelling the performance by the defendant of his agreement to make a will in her favor; and (b) the performance of his agreement to pay $250 per month for her support, and a money decree for arrearages in payments of the stipulated sum.
2. The complainant Annetta McDonnell, individually, seeks a decree compelling the defendant to pay some outstanding bills contracted by her while she was the defendant's wife, and as provided in an agreement entered into between them in the State of New York while they were still husband and wife, and while residents of that state.
That the bill is maintainable by the infant for whose benefit, in part, the agreement was made, see R.S. 2:26-3.6; Van Dyne v.Vreeland, 11 N.J. Eq. 370; Kamens v. Anderson, 99 N.J. Eq. 490; Di Girolamo v. Di Matteo, 108 N.J. Eq. 592; Herbert v.Corby, 124 N.J. Law 249; affirmed, 125 N.J. Law 502; Hufnagel
v. Scholp, 138 N.J. Eq. 16. In Di Girolamo v. Di Matteo,supra, Vice-Chancellor Buchanan said (at p. 595):
"It is unnecessary to cite authority for the well established principle that a contract to give or devise by will is enforceable in equity. It is equally true that the suit may be maintained by the child for whose benefit the agreement was made, notwithstanding she was not a party to the agreement."
Equity in New Jersey has complete and exclusive jurisdiction over contracts between husband and wife, and this extends to their specific enforcement. Dennison v. Dennison, 98 N.J. Eq. 230;
affirmed, 99 N.J. Eq. 883.
In dealing with this controversy and in considering the facts to be hereinafter stated, it should be borne in mind that this isnot a bill to enforce an agreement to pay alimony to a wife; nor is it a bill to enforce either the common law or the statutory liability of a husband to support his wife; and *Page 458 
it is not a bill to enforce the statutory liability of a parent for the support of a minor child of divorced parents, who is an inhabitant of this State, under R.S. 9:2-1. Such statutory jurisdiction is not, and could not be, invoked because the infant complainant is not an inhabitant of this State. Relief is sought under the inherent jurisdiction of this court over agreements between husband and wife.
This controversy arises out of the following state of facts:
The complainant Annetta McDonnell and the defendant William Stuart Harrington were married in New York on June 10th, 1939. Thereafter they lived in New Haven, Connecticut, until 1941 when they moved to New York City where they lived until their separation early in October, 1944. One child, the infant complainant, was born of the marriage. On October 25th, 1944, the separation agreement the subject of this suit was executed by them in New York. That agreement expressly provides that its interpretation and the rights of the parties "shall be governed by the laws of the State of New York." The agreement further provides that the wife "shall have the sole and exclusive custody of the Child and shall control and have supervision of her upbringing, subject to the" right of visitation by the husband as specified. It also provides for the payment of $500 monthly to the wife for her support and maintenance during the defendant's life, and in the event of the wife's remarriage (which has occurred), $3,000 a year in monthly payments of $250 each "until the Child attains the age of 21 years or marries, it being understood that such monthly payments of $250 are solely for the maintenance and support of the Child and to be used for such purposes only." Then follow provisions for the child's education, extraordinary medical, nursing and hospital treatment, all at the defendant husband's expense. The obligations of the husband under the agreement terminate on his death, but for payments in default at that time, his estate is liable.
Aside from the provision for the payment of $250 monthly for the support of the child, perhaps the most important provision of the agreement is that contained in the twelfth paragraph thereof, which reads as follows: *Page 459 
"12. The Husband shall forthwith make and keep in full force and effect until his death a will bequeathing and devising to the Child not less than one-third (1/3) of his entire estate. The Husband shall have the right to change such Will in the event other children are born to him to provide that such children shall share `per capita' in his estate. Upon the child's attainment of the age of 21 years the Husband shall have the right to change his Will in any manner he may desire."
By the agreement, it is also provided that:
"The Wife accepts the provisions herein made for her in lieu of and in full settlement and satisfaction of any and all claims and rights against the Husband for her support and maintenance in full satisfaction and discharge of alimony whether temporary or permanent and for the support, maintenance and education of the Child," c.
and agrees,
"* * * to save the Husband harmless from the payment of any bills previously contracted, with the exception of certain bills previously contracted, presently due and aggregating approximately the sum of $800.00, which the Husband agrees to promptly pay."
The agreement further provides that in the event of the husband's default, "the Wife shall have the right, at her election, to sue for damages for the breach of this agreement, or bring an action for a legal separation or for support and maintenance." And further, that the agreement "shall not be construed to prevent either party from suing for an absolute or limited divorce in this or any other competent jurisdiction," * * * "but no decree so obtained by either party shall in any way affect this agreement or any of the terms, covenants, or conditions hereof, this agreement being absolute, unconditional, and irrevocable and both parties intending to be legally bound hereby."
The agreement also provides that in the event the wife sues for divorce the agreement shall be offered in evidence and shall become a part of the decree.
Shortly after this agreement was executed the wife went to Reno, Nevada, and prosecuted an action of divorce against the defendant, and a decree of divorce in her favor was entered in that proceeding on December 12th, 1944. The agreement was incorporated in that decree. *Page 460 
Following the entry of this final decree of divorce, both parties remarried and the husband moved to New Jersey and is now a resident of this State. The wife, except for the period spent in Nevada prosecuting her divorce action, remained a resident of New York, residing in the apartment formerly occupied by the parties, then later moved to Connecticut where she now resides and has the custody of the infant complainant, the child of the marriage.
The bill alleges the defendant's default under the above-mentioned agreement in the following particulars: (1) Failure to make a will in favor of the infant complainant, as provided in the agreement; (2) failure to make the payments of $250 a month for the child's support; and (3) "has failed, neglected and refused" to pay bills contracted by the defendant's wife prior to the execution of the agreement, aggregating the sum of $800, as provided therein. The bill alleges that these bills remain unpaid and that the complainant, former wife of the defendant, "is being harassed and beset by importunate creditors and their attorneys and agents who are attempting to collect the same," and that she is without means to pay them.
The bill further alleges that the defendant is in receipt of an income of approximately $15,000 a year as beneficiary of a spendthrift trust under the will of his great-grandfather; that said trust will terminate in September, 1949, at which time the defendant will receive one-fourth of the assets constituting thecorpus of said trust, and charges that unless enjoined and restrained in the meantime the defendant may attempt to dispose of his share of said property in fraud of the complainant's rights.
The defendant in his answer to this bill asserts that he is unable to pay the agreed amount for the support of his daughter, but says that he is ready and willing to pay whatever amount the court deems proper in view of his circumstances; that his income is approximately $12,000 per annum, before taxes, and that this income is received from a spendthrift trust. He asserts that the agreement is collusive and was made to enable his wife to obtain a divorce in Reno, Nevada, and that it is, therefore, void; that the complainant, his *Page 461 
former wife, has breached the agreement and that it has merged in the decree of divorce of a foreign state which this court will not enforce. He does not defend on the ground that the agreement was unfair or unfairly obtained, except, inferentially, by his assertion that he is unable to make the payments therein provided for the support of his daughter.
At the final hearing, the will which establishes the trust fund from which the defendant receives an income was offered in evidence on behalf of the complainants. It is a Pennsylvania will, and the trust is a spendthrift trust. Neither principal nor income are assignable or subject to attachment or similar process, and the income is available and subject to such process only after it is in the physical possession of the defendant. No evidence whatever was offered to show the amount of defendant's income from the spendthrift trust, or of the amount of his other income, if any, or of his ability to make the payments for the support of his daughter as required by the contract. Nor was there any evidence whatever to support the assertion that the agreement was collusive and made for an illegal purpose, or of any breach of the agreement by the complainant former wife. The breaches alleged were failure of the wife to deliver to him certain articles of personal property which he left in the New York apartment, and removal of the child from New York to Connecticut without giving him notice of such removal. Both of these matters were quite satisfactorily explained by her.
The defendant by his answer denied his alleged default with respect to the making of a will in favor of the infant complainant, and alleges that he has made a will bequeathing one-third of his estate to her. At the final hearing there was produced before me and offered in evidence a will executed by the defendant and in the possession of his counsel. It was in a sealed envelope and was opened in court for my inspection. From that inspection I concluded that the provisions thereof for the infant complainant were not a sufficient compliance with the terms of the agreement, and I so advised the parties. After some discussion, I think it was agreed by counsel on both sides of this controversy that the *Page 462 
will did not provide for the infant complainant as required by the agreement. A copy of the third and fourth paragraphs of the will, the only pertinent portions thereof, was made a part of the record in this cause. The defendant admitted his failure to make the monthly payments of $250 for the support of his child, but said that he had offered to pay $150 per month which his former wife had refused to accept. By agreement of counsel on both sides with the court on the first day of the final hearing, the sum of $2,150 for arrearages, at the rate of $150 per month, was paid by the defendant to his former wife without prejudice to the rights of any of the parties.
As already stated, the bill alleges the defendant's failure and refusal to pay bills of his former wife, aggregating $800, as provided in the agreement. This allegation is denied in the answer and the defendant claims to have paid bills in excess of $800 — $952.19, to be exact — and he offered in evidence vouchers and checks covering bills totaling that amount which he claims to have paid pursuant to the fourteenth paragraph of the agreement. I have examined all of these checks and vouchers and they seem to cover only household and personal bills of the defendant for which he was already obligated and entirely aside from the provisions of the agreement. He claims, however, that the agreement was that he should pay household bills and personal indebtedness of both and all family bills up to but not exceeding $800, while the complainant claims that the agreement was that he should pay her personal bills previously contracted up to that amount. During the course of the final hearing the question of the proper construction of this provision of the agreement arose, and in a discussion with counsel for the defendant, which appears in the record at pages 78 to 82, both inclusive. I construed the agreement to refer to the wife's personal bills and not to household bills or personal bills of the defendant, and I think the record will show that counsel on both sides of this controversy agreed with my construction. I have examined all of the checks and vouchers covering the bills which the defendant says he paid, and which amount to the sum of $952.19, and I have concluded that none of them are *Page 463 
bills referred to in the agreement, and that, therefore, he has not paid the bills which he agreed to pay. The complainant wife offered in evidence a list of bills which she said were contemplated by this provision of the agreement, all of which were personal bills contracted by her prior to the date of the separation agreement. They amounted in the aggregate to $700.91. Of these bills she had already paid $189.41, and, in addition, a bill of Sheffield Farms for $65 covering the cost of milk and cream furnished to the parties while they were living together. Of the bills totaling $700.91, referred to by the complainant wife, bills amounting to $511.50 remain unpaid. The defendant admits he has paid none of the bills mentioned in that list. Consequently, he is in default on this item to the extent of $765.91 which includes Sheffield Farms bill of $65.
On behalf of the defendant it is urged that agreements of this character, both as applied to a divorced wife and children of the marriage, will not be enforced in this State where a decree of divorce has been obtained by the wife either in this or a foreign jurisdiction; that this court will not enforce an alimony or maintenance decree of a foreign court, and that the agreement here involved is now merged in the decree of the Nevada court; that agreements for maintenance of children are governed by the rules applicable to alimony and that the complainants' remedy, if any, is governed solely by R.S. 2:50-37. In support of these propositions counsel for the defendant cites the following cases: On the proposition that agreements will not be enforced where a decree of divorce has been obtained: Applegate v. Applegate,135 N.J. Eq. 29; Armour v. Armour, 131 N.J. Eq. 110, and132 N.J. Eq. 298; Richman v. Richman, 129 N.J. Eq. 114; that the court will not enforce a foreign decree: Bullock v. Bullock,52 N.J. Eq. 561; on merger: Corbin v. Mathews, 129 N.J. Eq. 549,554; that the maintenance of children is governed by the rules applicable to alimony: Ziesel v. Ziesel, 93 N.J. Eq. 133; Lester v. Lester, 122 N.J. Eq. 532; Hatch v. Hatch,15 N.J. Mis. R. 461, 466; that the court will adjust decrees according to the circumstances: White v. White, 65 N.J. Eq. 741; Ziesel v. Ziesel, supra; Rufner v. Rufner, 131 N.J. Eq. 193. *Page 464 
The complainant's counsel rely on Dennison v. Dennison,98 N.J. Eq. 230; affirmed, 99 N.J. Eq. 883; Cohen v. Cohen,121 N.J. Eq. 299; Moller v. Moller, 121 N.J. Eq. 175; Hill v.Ribble, 132 N.J. Eq. 486.
Since the decisions of the Court of Errors and Appeals inApfelbaum v. Apfelbaum, 111 N.J. Eq. 529; Second NationalBank v. Curie, 116 N.J. Eq. 101; Aiosa v. Aiosa, 119 N.J. Eq. 385,
and Phillips v. Phillips, 119 N.J. Eq. 462,
considerable confusion has existed among both bench and bar touching the validity of agreements between husband and wife for the support of the wife and minor children, and their enforcement in New Jersey. And this uncertainty and confusion is exemplified in an elaborate note to Applegate v. Applegate, supra, in154 A.L.R. 338. See, also, notes 166 A.L.R. 370 and 675.
In Cohen v. Cohen, supra, I attempted a reconciliation of the Apfelbaum, Phillips, Aiosa and kindred decisions of the Court of Errors and Appeals with the earlier decisions of the same court and of the Court of Chancery involving the specific performance of such agreements, distinguished the later cases from the Cohen Case, and concluded that such a contract for the separate maintenance of the wife, entered into prior toproceedings for divorce, nullity or maintenance, was not acontract for alimony, and held that while such agreements would not be specifically enforced in futuro, they were enforceable to the extent of a money decree for accrued arrearages. That opinion was written in the hope that on appeal to the Court of Errors and Appeals some of the confusion and apparent conflict in the decisions of that court might be explained or dispelled, but unfortunately, there was no appeal. Although numerous decisions of that court in which the Cohen Case could with propriety have been approved or disapproved have since been rendered, it has apparently remained unnoticed there. However, it was cited with approval by Mr. Justice Bodine, speaking for the Supreme Court inZirk v. Nohr, 125 N.J. Law 610, and has been cited with approval innumerable times in the Court of Chancery. In Moller
v. Moller, supra, Vice-Chancellor Bigelow followed the CohenCase and held that equity would decree specific *Page 465 
performance (or enforcement) of such a separation agreement to the extent of a money decree for accrued arrearages. There was no appeal from that decree. See, also, Adams v. Adams, 17 N.J.Mis. R. 234.
Since my decision in the Cohen Case, which was in 1936, the legislature has amended the alimony statute (P.L. 1907 ch. 216p. 481 § 25; Comp. Stat. 2035 § 25, as amended by P.L. 1933ch. 145 p. 296 § 1) by P.L. 1938 ch. 235 p. 538 § 1. By this amendment there was added to this section the phrases "brought in this State or elsewhere" and "whether obtained in this State or elsewhere." But, in my judgment, this fact is immaterial so far as the present controversy is concerned.
In the Cohen Case I held that the Apfelbaum, Curie, Aiosa
and Phillips Cases were distinguishable from the case at bar, and, that rightly understood, those decisions were not contra
to my decision in that case. I held that jurisdiction to enforce contract rights between husband and wife was exclusively in this court and that its jurisdiction was inherent — that its statutory jurisdiction over agreements between spouses was confined toalimony agreements, c. I held that the Court of Errors and Appeals could not be assumed, by those cases, in the absence of an express statement to that effect, to have intended to override the law of this State as it had stood for over a century, and did not intend to reverse its own decisions that specific performance of contracts between husband and wife was within the inherent jurisdiction of the Court of Chancery, an example of which wasAspinwall v. Aspinwall, 49 N.J. Eq. 302. It would serve no useful purpose to now discuss the cases there reviewed by me. However, it may be well to again point to the fact that, in theApfelbaum Case, which is the foundation of the later decisions, the agreement for support, the specific performance of which the wife sought, was made after the divorce decree. By statute the Court of Chancery was empowered to modify such a decree, and it was held that the parties could not by agreement between themselves deprive the court of jurisdiction. And to the same effect are the decisions in Parmly v. Parmly, 125 N.J. Eq. 545,
and Baumgarten v. Baumgarten, 107 N.J. Eq. 274. *Page 466 
Since the Cohen Case was decided there have been numerous decisions of this court and of the Court of Errors and Appeals involving separation agreements and contracts between husband and wife for support maintenance of the wife and minor children of the marriage, in which the statement of that court in the CurieCase that such agreements are "subject to the control of the Court of Chancery, but not by way of specific performance," is repeated again and again. This conclusion seems to be based upon the idea that public policy, as evidenced by the Divorce Act, forbids a husband and wife to enter into a contract touching the future support of the wife and minor children so as to deprive the Court of Chancery of the jurisdiction conferred upon it by that act, and that such agreements constitute a usurpation of Chancery's powers; but Chancery's jurisdiction in matrimonial matters is purely statutory, and there is another jurisdiction — the inherent or constitutional — that jurisdiction inherited from the English Court of Chancery — which equals, if it does not transcend, that conferred by statute. Even public policy cannot deprive this court of its inherent or constitutional jurisdiction except by means of constitutional amendment. Mere statutory expression will not suffice, at least under the Constitution of 1844. What will become of the inherent jurisdiction and power of the Chancellor (the Court of Chancery) under the 1947 Constitution is of no moment here; but in view of the provisions of article XI, section IV, paragraph 10 of that document, that interesting question will undoubtedly arise after September 15th, 1948 — the effective date of the Judicial Article.
I have read every reported case touching separation or support and maintenance agreements entered into between husband and wife which has been decided since the Cohen Case. Only two of them need be mentioned here. They are Polyckronos v. Polyckronos,17 N.J. Mis. R. 250, and Applegate v. Applegate, supra. A number of the remaining cases decided in the Court of Chancery follow the Cohen Case or cite it with approval. For example,Moller v. Moller, supra; Adams v. Adams, supra. Of the remaining cases, all except Applegate v. Applegate, supra, are readily distinguishable *Page 467 
from the Cohen Case in that the agreements there involved were made during the pendency of the suit between the parties for divorce or maintenance, or subsequent to a decree in such a suit, and were agreements made in this State and their interpretation and construction was governed by our laws. In many of these cases the above-quoted statement of the Court of Errors and Appeals in the Curie Case was quoted in support of the decision, but, also, in many of them the statement was unnecessary to the decision and can be considered only as obiter. Not a single case, except Polyckronos v. Polyckronos, supra, is opposed to the decision in Dennison v. Dennison, supra.
In Polyckronos v. Polyckronos, supra, the advisory master held that,
"All agreements, wherever made, entered into directly between husbands and wives, and whether before or after the marriage is dissolved, which attempt to fix support and maintenance, are voidper se because contrary to the public policy of this State as declared by what is commonly known as our Divorce Act, being 1R.S. (1937), 2:50-1 et seq., and formerly 2 Comp. Stat.1910 p. 2021."
In Dennison v. Dennison, supra, I held that an alimony contract between husband and wife, made during the pendency of a divorce suit in Pennsylvania, was not void in that state as against public policy if free from collusion and not made for the purpose of facilitating a divorce, and that such a contract isnot void per se in New Jersey. This decision was affirmed by the Court of Errors and Appeals on my opinion. The advisory master's decision in the Polyckronos Case, above quoted, appears to be in conflict with the Dennison Case. There is no doubt but that the Court of Chancery had the power under the statute to fix alimony in the Polyckronos Case. The parties were in court on the husband's petition for divorce. He could not complain that the wife sought her statutory rights. It was her privilege to treat the agreement as binding and sue for specific performance, or elect to take her statutory remedy. Rennie v. Rennie,85 N.J. Eq. 1. She chose the latter course, which stamped the agreement, in her opinion, as unfair and unjust. Such being *Page 468 
the charge, the court had no alternative but to inquire into the necessities of the wife and the abilities of the husband, and it was unnecessary to the decision to hold that all such agreements are void per se. In my judgment, the agreement was not voidper se, only voidable (by the wife) if inequitable or unfairly obtained. The burden of showing unfairness is always on the husband. Dennison v. Dennison, supra; Ireland v. Ireland,43 N.J. Eq. 311. And "the equities to be considered in determining the fairness or unfairness of such a contract are the equities as applied to the wife." Dennison v. Dennison, supra. And, see,Hires v. Hires, 91 N.J. Eq. 366; affirmed, 92 N.J. Eq. 451.
 Meyer v. Meyer, 124 N.J. Eq. 198, involved a separation agreement entered into by the parties in the State of New York, and it was held that the capacity of the husband and wife to enter into a separation agreement, the validity of the agreement, and the extent of the obligation thereby created, are determined by the law of the place where the contract was made, in the absence of any indication that the parties intended the contract to be governed by some other law. Also that the enforcement of such an agreement in the courts of this State is not contrary to our public policy. In Robertson v. Robertson,114 N.J. Law 558, it was held that "An agreement by a husband, living apart from his wife, for her support, is neither immoral nor against public policy." Both the Meyer Case and the Robertson Case
are in agreement with Dennison v. Dennison and are contra
on this point to the Polyckronos Case.
In Massachusetts a New York agreement for support, valid there, and not repugnant to the public policy of Massachusetts, is enforceable there in equity on a bill for specific performance.Richards v. Richards, 270 Mass. 113; 169 N.E. Rep. 891.
Reference to the cases cited in the note to Garlock v.Garlock, 120 A.L.R. 1331, 1334, will show that in most American jurisdictions such agreements are not void as against public policy.
In Applegate v. Applegate, supra, decided by the Court of Errors and Appeals in 1944, that court again held that equity will not grant the specific performance of an agreement *Page 469 
to pay alimony, and reaffirmed its decisions in the Apfelbaum,Curie, Aiosa and Phillips Cases. The bill in that case, among other things, sought the specific performance of an agreement between husband and wife for the maintenance and support of the wife, executed in July, 1932. In 1934 the wife obtained a decree of divorce from her husband. The husband having defaulted, the wife filed her bill for specific performance. The court held that Chancery was without jurisdiction to grant specific performance of such an agreement. The decision is plainly contrary to my decision in the Cohen Case, but the Cohen Case is not mentioned in the court's opinion; and the court did not distinguish between the statutory right of a wife to alimony
and her common law right, arising out of the marital status, to support and maintenance. Nor did it notice any distinction between the statutory jurisdiction of the Court of Chancery to award alimony and its inherent jurisdiction over contracts between husband and wife. Nor was there any reference to the fact that the word "alimony" is a technical word entirely statutory and enforceable in equity only as an incident to a suit for divorce or nullity, or in a suit for maintenance; or that it is a personal and not a property right, but is an allowance made to the wife by order of the court, following the practice of the English ecclesiastical courts; or that the right to stipulated payments for support under the terms of an agreement between husband and wife is purely a contractual right, and therefore a property right. Arrearages in stipulated payments under a contract between husband and wife constitute a debt; but arrearages in the payment of alimony under a court order do not. For this reason the payment of the latter may be enforced by attachment for contempt, while the former will not be because of the constitutional provision abolishing imprisonment for debt on any judgment founded on contract. Aspinwall v. Aspinwall,supra; Lynde v. Lynde, 64 N.J. Eq. 736; Rennie v. Rennie,supra; Cohen v. Cohen, supra; Adams v. Adams, 80 N.J. Eq. 175.
 Aspinwall v. Aspinwall, supra, and Applegate v.Applegate, supra, both decided by the Court of Errors and Appeals, can not be reconciled. The Aspinwall Case is not even mentioned *Page 470 
in the Applegate opinion. Nor is it mentioned in any of the opinions of the Court of Errors and Appeals in the Apfelbaum,Curie, Aiosa or Phillips Cases, except in the dissenting opinion of the Chief-Justice in the Phillips Case. Without some express statement to that effect, I am unwilling to believe that the Court of Errors and Appeals ever intended to overrule its decision in the Aspinwall Case rendered more than a half century ago and which has been one of the guiding lights for both bench and bar in the ensuing period.
But whatever may have been the intention of the appellate court, or the result of these later decisions as applied to pre-existing law, I think it is clear that neither the decision of the Court of Errors and Appeals in Applegate v. Applegate,supra, nor the decision in Cohen v. Cohen, supra, have any application to the present controversy; nor are the following cases cited and relied upon by counsel for the defendant controlling here.
In Armour v. Armour, supra, the complainant filed a bill for the construction of a separation agreement between husband and wife, made during the pendency of a suit for maintenance, and for specific performance of the agreement. The answer raised the question of Chancery's jurisdiction to decree specific performance. A motion to strike the answer was denied, and the Court of Errors and Appeals affirmed. It was quite obvious that this agreement was not enforceable because it was made in New Jersey during the pendency in this court of a suit for maintenance, and after the statutory jurisdiction had been invoked. The advisory master held such agreements "without validity as a contract because beyond the competence of the parties to make it." The Court of Errors and Appeals held this statement was not necessary to the decision and refused to pass upon it. Later, the same case came before the Court of Errors and Appeals on an appeal from an order of the Court of Chancery permitting an amendment of the bill adding another cause of action, and an order for alimony and counsel fees pendentelite. Both orders were reversed, the Court of Errors and Appeals holding the bill on remittitur should have been dismissed and reiterating their holding that "Chancery was not competent *Page 471 
to grant specific enforcement of maintenance agreements," citing the Aiosa and Phillips Cases. Obviously, that was true in that case because the court could not be deprived of its statutory jurisdiction, already acquired, by an agreement between the parties.
In Richman v. Richman, supra, the only question involved was whether or not a wife living apart from her husband, with his acquiescence, was entitled to file a bill for separate maintenance. The advisory master held, in an unreported opinion, that she was so entitled. On appeal his decision was affirmed by a vote of seven to six, and the Court of Errors and Appeals adopted his opinion as its own, and it is published in full in129 N.J. Eq. 114. The advisory master said, referring to the wife's right to support and maintenance, and agreements between husband and wife living apart respecting such support:
"There is no authority in the Court of Chancery to deal with these matters except by statute [citing cases]. Hence as between husband and wife, undivorced, this court must derive its sole authority to decree maintenance and support from the section of our statute which deals with separate maintenance."
He quotes from the Phillips and Curie Cases the language of the Court of Errors and Appeals to the effect "that an agreement for support between husband and wife living apart by mutual consent comes `under the general class of agreements for maintenance where husband and wife are living apart and, as such, is subject to the control of the Court of Chancery, but not by way of specific performance.'" It should be noted, however, that the statutory jurisdiction of the court had been invoked by the wife, and that no agreement between husband and wife was involved in the suit. For these reasons, it would seem that all the quoted comment touching such agreements was unnecessary and obiter.
In Bullock v. Bullock, supra, the complainant wife obtained a decree of divorce in New York. The decree provided for alimony of $100 per month and directed the defendant husband to secure its payment by executing a mortgage on New Jersey lands owned by him. Upon his failure to comply with *Page 472 
this direction the wife filed a bill in this court for a decree directing the husband to execute and deliver the mortgage as required by the New York decree. The bill was dismissed because it disclosed no equity. It was held, also, that such a decree of a foreign court is purely in personam, does not constitute a lien on lands in New Jersey, and full faith and credit will be given to such decree under section 1 of article IV of the federal constitution by according to it a force merely personal upon the parties and enforceable alone by process of the foreign jurisdiction. This case is cited by counsel for the defendant as authority for the proposition that this court will not enforce the decrees of a foreign court for alimony and maintenance. The decision extends only to a refusal to direct the defendant to execute a mortgage on lands in New Jersey mainly because the New York courts had no jurisdiction to impose a lien on New Jersey lands, and the decree being purely in personam, was enforceable only by process issuing out of the foreign court.
In Zeisel v. Zeisel, supra, the only question before the court was what was "fit, reasonable and just" support and maintenance, education, c., for a boy sixteen years of age, whose father's income was $4,500 per year. The parties were divorced in Pennsylvania and thereafter removed to New Jersey. On a bill filed in this court for the support of the minor child a decree was entered awarding the custody to the mother and directing the payment of a stipulated sum each week for his support, maintenance and education, and leave was granted by the decree to either party to apply thereafter for such variance or modification thereof as changing circumstances might render equitable and just. Some years later the mother of the minor child, and former wife of the defendant, applied for increased allowances. In reversing a decree of the Court of Chancery by which the allowance for the support of a minor child was increased, the court held that not only the income of the father, but the fact that he had remarried and had his new wife and a child by that marriage to support, were proper to be considered by the court as circumstances affecting his ability to pay the increased allowance. The case has no application to this controversy *Page 473 
as there was no agreement between the parties before the court and the minor child was an "inhabitant" of this State, and his rights were controlled by the statute then in force. Comp. Stat.p. 2809, now R.S. 9:2-1.
In Lester v. Lester, supra, decided in 1937, Vice-Chancellor Bigelow held that a contract between husband and wife fixing the amount which the husband shall pay to the wifeafter divorce, for the support of their child, is contrary to the policy of the Divorce Act and is unenforceable. In that case "the parties * * * while they were husband and wife, reached an understanding * * * that the wife would seek a divorce and would take custody of their three-year-old daughter," and the husband allegedly "agreed to pay to the complainant for the support of the said child during her minority $150 monthly." The bill sought a money decree for arrears, school bills and medical bills. This was not a separation agreement, but an agreement to procure a divorce, and the stipulations touching the support of the child were an usurpation of Chancery's prerogative under the statutes. It has no bearing on the instant case.
In Hatch v. Hatch, supra, a decree for divorce at the suit of the husband had been entered in the Court of Chancery by which decree the custody of an infant child was awarded to the wife. Only two questions were involved on the application to modify the decree, namely, whether, in view of a change in the domicile and residence of the parties and of the child after the entry of the original custodial order: (1) the court had jurisdiction to change the custody; or, (2) to modify the allowance for the child's support retroactively. It was held that the court did have jurisdiction to change the custody but not to revise its orders for the child's support retrospectively. The court held that the rights of the parties were controlled by section 25 of the Divorce Act and that "whatever construction is to be placed upon the statute with reference to alimony the same construction must be applied when questions concerning maintenance of children are involved." Only the statutory jurisdiction of this court was there invoked. The decision is not pertinent here because the statutory rights of the infant complainant in this suit are not involved. *Page 474 
In White v. White, supra, decided by the Court of Errors and Appeals in 1903, the parties were divorced by decree of an Oklahoma court which contained no provision for the maintenance of two minor children of the marriage. Later, the children beingin this State, the mother filed a petition under section 24 of the Divorce Act of 1874 (G.S. 1271) for their custody and an allowance for their support and maintenance. It was held that such allowance was proper and that the court under that act had a continuing right to vary such provisions from time to time.
The provisions of section 24 of the 1874 Divorce Act were embodied as section 6 in the act concerning minors (P.L. 1902 p.263; Comp. Stat. p. 2809, now R.S. 9:2-1). Under that act the Court of Chancery has undoubted power to vary the support of a minor child of parents divorced in another state according as the circumstances of the parties require, but the minor child must, under the express language of the statute, be an "inhabitant(s) of this state" to give the court jurisdiction.
In Rufner v. Rufner, supra, a decree of divorce in favor of the wife incorporated therein a previous agreement between the parties providing for the support of the wife and two daughters. The main question before the court on appeal was whether the court could remold the decree by modifying the provisions for support and maintenance of the wife and children. It was held that the court had the power notwithstanding the fact that the agreement was merged in the decree. The case has no application to the present controversy.
The power of the Court of Chancery to modify a decree which incorporates, by reference or otherwise, an agreement between husband and wife for the latter's support, is sustained inParmly v. Parmly, supra, and in Kirshbaum v. Kirshbaum,125 N.J. Eq. 558, but those decisions are not pertinent here because the agreement sub judice is a New York agreement expressly controlled by New York law.
In Corbin v. Mathews, supra, the bill was for accrued arrearages under a separation agreement. Subsequent to the agreement the wife obtained a divorce in Nevada and the agreement was incorporated in the decree by reference. Shortly *Page 475 
after the divorce the complainant wife remarried. The answer admitted the agreement but claimed that it was obtained by fraud in that the complainant concealed her intention to remarry. By counter-claim the husband sought a decree that the contract was void. On motion in the Court of Chancery the answer and counter-claim were stricken as sham and frivolous. This order was reversed as to the answer, and the Court of Errors and Appeals held that there was "no equity in the counter-claim" and that it "was properly struck." It was also held that the agreement merged in the decree, and under R.S. 2:50-38 the Court of Chancery was obliged to annul the decree for alimony. The parties to this agreement were residents of New Jersey. The agreement was made in New Jersey and, obviously, under the statute, the agreement merged in the decree. Thereafter payments were made pursuant to the decree, not the contract. Upon the remarriage the decree became a nullity in so far as alimony was concerned. The decision is not pertinent here.
But whatever the implications of the decision in Applegate v.Applegate, supra, and the other cases relied upon by the defendant, they are not controlling upon my decision in the case at bar which, in my judgment, must be controlled by Dennison v.Dennison, supra. My research has disclosed no case in this State, except the Polyckronos Case, which is in any sense opposed to the decision in Dennison v. Dennison, and I do not think that the advisory master who wrote the opinion in that case intended to repudiate the decision in the Dennison Case, for, although the contract before him was made in New York, the husband later moved to New Jersey and brought a suit against his wife for divorce, and the Advisory Master said the purpose of the foreign made agreement was to avoid the consequences of a possible alimony order in that suit, but having sought the benefit of the laws of our forum in the divorce action he "automatically became amenable to our laws." Obviously, the rights of the parties were controlled by our statute.
In the case now before the court, the infant child of the parties is not domiciled in New Jersey, hence R.S. 9:2-1 does not apply. It applies only "if minor children of the marriage are inhabitants of this state." As in the Dennison *Page 476 Case the statutory jurisdiction is not, and could not be, invoked. Relief is sought under the inherent jurisdiction of the Court of Chancery over agreements between husband and wife.
As this court has complete and exclusive inherent jurisdiction over contracts between husband and wife, it is idle to say that, by the enactment of the Divorce Act, R.S. 2:50-1 et seq., the court is deprived of its jurisdiction to enforce such contracts and is restricted to giving the relief provided by that act. To accede to this proposition would be to admit that the legislature under the Constitution of 1844 had the power to deprive the Court of Chancery of its inherent jurisdiction; but it has been decided over and over again that the legislature is powerless to do so. It is important in deciding questions touching this court's jurisdiction, to distinguish between its inherent or constitutional jurisdiction and that conferred by statute.Woodruff v. Clark Apgar, 42 N.J. Law 198; Wood v.Chetwood, 44 N.J. Eq. 64; affirmed, 45 N.J. Eq. 369. Its jurisdiction in divorce and maintenance suits is purely statutory, but that over contracts between husband and wife is inherent or constitutional. Ibid.
I shall now consider the question as to the relief, if any, to which the two complainants are entitled.
As already stated, the agreement here involved expressly provides that its interpretation and the rights of the parties thereto shall be governed by the laws of the State of New York, and it appears from the testimony of a New York lawyer, examined as a witness on behalf of the complainants, that the agreement is valid under New York laws and would be enforceable by way of specific performance in that state if the parties were subject to that jurisdiction. And, further, that the subsequent entry of a foreign decree of divorce in no way affects the agreement, and does not deprive the parties thereto, or those for whose benefit it was made, of any of their rights or remedies, and this notwithstanding the incorporation of the agreement in the decree. This statement of the law of New York as applied to this contract and the rights of the parties thereunder was not challenged by the defense, and I must assume that it is a correct statement of that law. *Page 477 
The infant complainant is entitled to a decree directing the defendant to make and execute a will in strict conformity with this agreement, and to pay to the wife, for the support of the said child, the accumulated arrearages and deficiencies in the monthly payments as provided in the agreement, and to continue such monthly payments until the further order of this court.
The infant complainant not being an inhabitant of this State, and relief not being sought under R.S. 9:2-1, the New Jersey decisions — Ziesel v. Ziesel, Lester v. Lester and Hatch
v. Hatch, supra — cited by counsel for the defendant in support of his contention that this complainant is not entitled to any relief, are not in point. Nor is R.S. 2:50-37 applicable here as the parties expressly agreed that their contract should be governed by the laws of the state of their domicile at the time of its execution. By his subsequent removal to New Jersey the defendant can not avoid the obligation of his contract.Dennison v. Dennison, supra. In that case I said, at page 240 of the report:
"The defendant should not object to the application of this rule, since he has, of his own choice, made this the state of his residence, thereby voluntarily submitting himself to its laws, and has compelled the complainant to enter this state to enforce the contract. To accede to the contention of the defendant that by removing to this state he can thereby avoid the obligation of this contract would be, in effect, to offer New Jersey as a haven for all ex-husbands who wished to avoid the results of their alimony contracts and furnish for them a complete refuge from prosecution thereunder. Since in this state equity has exclusive jurisdiction over contracts between husband and wife, it seems idle to contend that because contracts between husband and wife are not prohibited in Pennsylvania, where this contract was made, equity ought not to assume jurisdiction for its enforcement here. This agreement having been made while the parties were still husband and wife, the subsequent entry of a divorce decree could not divest the complainant of her vested rights under the agreement. Buttlar v. Buttlar, supra; Galusha v. Galusha,116 N.Y. 635." *Page 478 
That language was subsequently adopted by the Court of Errors and Appeals by its affirmance on my opinion.
The only relief here sought by the former wife of the defendant, individually, is a money decree for the amount of her personal debts which he agreed to pay and which he admits he has not paid; or, in the alternative, a decree directing the defendant to pay such bills. It would seem that only in this court can this complainant obtain the relief to which she is entitled; and the agreement being valid under the laws of New York, and not void per se as opposed to our public policy, I am of the opinion that a money decree in her favor for $765.91 is most appropriate.
I will advise a decree accordingly.